Ronald SHERMAN, Michael Malone, Jerome Waldor, Ravo Elias, Irving Bross, Thomas Cashman, John deElorza, Nathan Finkelstein, Mildred Schultz and K–T Associates, Plaintiffs,

v.

Richard D. WELLBROCK, William L. McKenna, Joseph Mailly, Leasing Consultants, Inc., Lampf, Lipkind, Prupis & Petigrow, Edward Lange, and Arthur Esch, Defendants.

Civ. A. No. 88–1765.

United States District Court, D. New Jersey.

April 8, 1991.

Frank A. Pizzi, Jr., Frank A. Pizzi, P.A., Summit, N.J., for plaintiffs Michael Malone and Thomas Malone.

Jay J. Rice, David W. Lentz, Nagel & Rice, Livingston, N.J., for plaintiffs Ronald Sherman, Jerome Waldor, Ravo Elias, Irving Bross, Thomas Cashman, John deElorza, Nathan Finkelstein, Mildred Schultz and K–T Associates.

## OPINION

LECHNER, District Judge.

Currently before the court are the objections of the plaintiffs (the "Plaintiffs"), excluding Michael Malone and Thomas Malone (the "Malones"), to a Report and Recommendation (the "Report and Recommendation") of United States Magistrate Judge Ronald J. Hedges, filed 1 February 1991. Plaintiffs ask that the court reject the Report and Recommendation and retain jurisdiction of a dispute over the enforcement of a settlement agreement. Plaintiffs also move to vacate the restraints prohibiting them from distributing certain funds held in escrow pursuant to that settlement agreement. The Malones, in contrast, seek adoption of the Report and Recommendation and oppose the removal of the restraints with respect to the funds held in escrow.[1] For the reasons set forth below, the Report and Recommendation is adopted in part and rejected in part. In addition, Plaintiffs' motion to vacate the restraints is granted.

## FACTS

The current dispute arises out a suit brought by Plaintiffs in a complaint filed on 19 April 1988 (the "Complaint"). Plaintiffs brought suit against defendants for securities fraud, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and various state law claims. Plaintiffs alleged defendants engaged in a fraudulent scheme to promote limited partnership interests in a corporation engaged in the purchase and leaseback of computer equipment. In a Letter–Opinion and Order, filed 10 May 1989, Plaintiffs' securities law claims and state law claims were dismissed pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiffs' RICO claims, however, were not dismissed and they were given leave to amend the Complaint to replead certain allegations. The amended complaint was filed on 5 May 1989 (the "Amended Complaint").

Subsequently, the parties entered into a proposed "Order Stipulating Dismissal and Embodying Terms of Settlement" (the "Proposed Settlement Order"). The parties agreed to dismissal of this case upon the payment by defendants of certain sums of money (the "Settlement Proceeds"). The Proposed Settlement Order provides:

1. The parties have submitted the following in support of the motion and cross-motion: Certification of David Lentz, dated 18 March 1991 ("Lentz Certification"); Order Stipulating Dismissal and Embodying Terms of Settlement ("Proposed Settlement Order"); Stipulation and Protective Order ("Protective Order") Plaintiffs' Brief in Support of Objections to Report and Recommendation and in Support of Motion to Vacate Restraints ("Plaintiffs Brief"); Plaintiffs' Reply Brief to Cross–Motion ("Plaintiffs Reply Brief"); Certification of Michael J. Malone, dated 5 March 1991 ("Malone Certification"); Malones' Brief in Opposition to Plaintiffs' Motion and in Support of Report and Recommendation and Cross–Motion ("Malones Brief"). Although the Malones initially characterized their opposition as a cross-motion, they have notified the court by way of a letter, dated 22 March 1991, that they merely oppose Plaintiffs' Motion and do not make any cross-motion.

Initially, Plaintiffs submitted their Notice of Objection to the Report and Recommendation ("Notice of Objection") on 14 February 1991, within ten days of receipt by Plaintiffs of the Report and Recommendation. Included with the Notice of Objection was Plaintiffs' Notice of Motion to Vacate Restraints ("Notice of Motion"). The Notice of Motion was rejected for filing because it was not filed pursuant to the court's dispositive motion procedure. The Notice of Objection was also rejected for filing. Because the Notice of Objection could have been filed apart from the Notice of Motion, it is acknowledged that the objections to the Report and Recommendation were timely, despite the fact that they were not refiled until 22 February 1991.

"This matter having been opened to the Court upon Stipulation of the parties to the above captioned civil action by Nagel & Rice, Esqs., appearing for plaintiffs; Gutkin, Miller, Shapiro & Selesner, Esqs., appearing for defendants Leasing Consultants Inc., Richard Wellbrock, William McKenna and Joseph Mailly; Tompkins, McGuire & Wachenfeld, Esq., appearing for defendants Lampf, Lipkind, Prupis & Petigrow; Steven Vasak, Esq., appearing for Richard Heitmeyer, and Litwin & Holsinger, Esqs., appearing for defendants Arthur Esch and Edward Lange and the parties to this action having agreed to settle and dismiss said civil action as herein stipulated subject to the performance of the within terms and conditions and to provide for the enforcement thereof as a Judgment of this Court and for good cause shown, the Court hereby approves the following settlement terms:"

"(1) The parties to this Stipulation, each without admitting the validity or veracity of the contentions of the other parties to this Stipulation, in order to avoid the difficulty and expense and possible detriment to the parties of an on-going protracted litigation, have agreed to compromise the above enumerated dispute and including any matters which may or might have arisen therein, on the terms and conditions set forth herein."

"(2) Defendant Lampf, Lipkind, Prupis & Petigrow ("Lampf Lipkind") shall pay plaintiffs the sum of $160,000 within 30 days of receipt of the release herein and executed stipulations of dismissal of this action and the companion action filed in state court captioned *Sherman et al. v. Wellbrock, et al.*, Docket No. 044309 (Law Div.1988). Attached hereto is a copy of the executed stipulation dismissing the state court action. Should any defendant other than Lampf Lipkind default under the terms of this agreement thereby providing plaintiff with the right to reinstate this action as to that defendant, that reinstatement shall not include Lampf Lipkind so long as Lampf Lipkind shall have performed according to these provisions."

"(3) The defendants Richard Heitmeyer, William McKenna and Richard Wellbrock shall pay the sum of $35,000 each ($105,000 total) payable to K–T Associates, c/o Nagel & Rice, 301 S. Livingston Avenue, Livingston, New Jersey. The payments shall be delivered and received by December 31, 1990."

(a) If Heitmeyer, McKenna or Wellbrock or any of them fail to deliver his $35,000 payment by December 31, 1990, plaintiffs shall have the right to proceed *ex parte* to enforce the terms hereof by obtaining a personal judgment from this Court against the particular defaulting defendant for the amount of their individual obligation. Thus, by way of example, if Wellbrock and McKenna delivered their payment by December 31, 1990, but Heitmeyer fails to do so, then plaintiff may make *ex parte* application before this Court based upon attorney certification, for judgment in the amount of $35,000 against Heitmeyer individually. The failure of either Heitmeyer, McKenna or Wellbrock to pay, shall not impose any liability upon any defendant who has rendered their payment in a timely fashion.

(b) The obligation to pay $35,000 by each of Heitmeyer, McKenna or Wellbrock shall not bear interest from the date hereof until December 31, 1990. If however, the obligation is defaulted by either of these defendants, any judgment entered by the Court shall bear interest at the legal rate imposed by law and any judgment shall include costs of collection including reasonable attorneys' fees.

(c) The defendants Heitmeyer, Wellbrock and McKenna waive presentment and notice of any default upon their obligation to each pay $35,000.

(d) In the alternative, if either Heitmeyer, Wellbrock and McKenna default, plaintiffs shall have the option to reinstate this action or the companion action to be dismissed in the New Jersey Superior Court against the defaulting defendant in federal and state court and proceed to trial as though this stipulation had not been entered.

"(4) Defendants Esch and Lange shall cause their company, Computer Match Inc. to execute a promissory note in plaintiffs'

favor upon the following terms and conditions:"

(i) Computer Match shall pay to the plaintiffs the principal amount of $55,000 as follows: $10,000 immediately upon the execution of the Computer Match Note to the plaintiffs; $45,000 over three years with annual interest at 6% (six percent) interest on the unpaid balance from February 1, 1991 until paid. The said principal and interest shall be payable to K–T Associates, c/o Nagel & Rice, 301 S. Livingston Avenue, Livingston, New Jersey in equal monthly amortized installments of One thousand, three hundred and eighty-eight dollars and 99/100 cents commencing on the first day of February, 1991 and continuing on the first day of each month thereafter until the Note is fully paid; except that if not paid sooner, the entire indebtedness shall be due and payable on the first day of January, 1994.

(ii) If, on the sixth day of the month, payment is not received, written notice of default shall be provided and the obligor shall be provided a fifteen day opportunity to cure. If the default is uncured, the plaintiffs may accelerate any remaining indebtedness and add to the principal, as a penalty, an amount equal to 25% of the then-outstanding balance as additional principal. In addition, in event of default, the Note shall provide for payment to plaintiffs of collection costs and expenses including reasonable attorneys' fees.

(iii) John Holsinger, Esq., shall be designated agent for service of process in connection with the Computer Match Note.

[paragraphs (5)–(7) omitted in original]

"(8) Esch and Lange shall personally guarantee the Computer Match Note to plaintiffs as well as any principal and interest payments due thereon. They shall also agree to designate John Holsinger, Esq., as the designated agent for service of process upon the Guarantees. In lieu of security or pledge upon the Note, Esch and Lange shall provide financial statements under seal disclosing their individually or jointly held assets held in the entireties, as joint tenants or as tenants in common, liabilities, then-current terms of employment and residences. This statement shall be updated every six months until the Computer Match Note is repaid in full."

"(9) Esch and Lange further agree that in the event of a default upon the Computer Match Note which remains uncured following notice and opportunity to cure, plaintiffs shall have the right to proceed *ex parte* upon application to this Court, to enforce the terms hereof, and obtain a judgment against Esch and Lange for the outstanding balance of the Computer Match Note following presentment of attorney certification attesting to continuing default."

"(10) In the event Computer Match defaults in making the first $10,000 payment and Esch and Lange fail to cure that default upon their guaranty, plaintiffs shall have the option to reinstate this action or the companion action to be dismissed in New Jersey Superior Court against the defaulting defendants for the full amount sought in the complaint less any sums paid hereunder."

"(11) This civil action as well as civil action pending in the Superior Court of New Jersey entitled *Ronald Sherman, et al. v. Richard Wellbrock, et al.*, Docket No. 044309–88 shall be dismissed with prejudice subject to the terms and conditions hereof upon execution of the within stipulation of settlement."

"(12) As attorney for plaintiffs, by counsel's signature below, plaintiffs forever release each of the defendants from all claims, causes of action or any other contentions which they have or could have raised in connection with, arising from or associated with the purchase of units of K–T Associates including any income tax consequences arising therefrom or any other expenses, cost or loss incurred at any time on behalf of each of the plaintiffs. Individual releases from the plaintiffs will be submitted upon receipt by counsel for plaintiffs."

"In particular, plaintiffs release any and all claims, causes of actions or contentions

plaintiffs asserted or could have asserted in an action entitled *Sherman v. Wellbrock, et al.*, Superior Court of New Jersey, Docket No. W–044309–88 and a separate action entitled *Sherman v. Wellbrock*, United States District Court, Civil Action No. 88–1765 (D.N.J.)."

"This release does not release the defendants from their respective obligations set forth in this Stipulation and the guaranties and notes associated with this Stipulation. The defendants are likewise not released from any contingent liability arising from their respective failure to perform according to this Stipulation. The failure of any particular defendant to perform shall not create any liability for other defendants who comply with the terms of this Stipulation or the associated notes and guaranties."

"(13) The defendants' payment obligations set forth herein and in a companion stipulation dismissing the state court action are not cumulative. If the payments and obligations set forth herein are performed, both actions shall be dismissed as to all performing defendants."

"(14) In the event of a default and re-opening of the litigation against a defaulting party, that party shall be precluded from cross-claiming or in any other way pursuing, asserting, raising or advancing any affirmative claim against any other non-defaulting party whether by way of cross-claim (for contribution or indemnification) or by way of third party claim."

"(15) The parties to this Stipulation have agreed to enter into a confidentiality agreement which is attached hereto, which agreement shall be evidenced by the signature of counsel."

Proposed Settlement Order at 1–8.

On 30 November 1990, the parties appeared before Magistrate Hedges seeking entry of the Proposed Settlement Order. At that hearing, the Malones, apparently for the first time, objected to the manner in which the Settlement Proceeds were to be distributed. Plaintiffs Brief at 2–3. In an

order filed 7 January 1991 (the "Magistrate Order"), Magistrate Hedges noted that all parties, including the Malones, consented to entry of the Proposed Settlement Order.[2] Magistrate Order at 2. Magistrate Hedges, however, ordered that a hearing was to be held on 18 January 1991 to determine the validity of the Malones' objection. Magistrate Order at 3. In addition, Magistrate Hedges ordered: "All settlement proceeds paid by the defendants shall be placed in an interest bearing attorney trust fund account for the benefit of all plaintiffs and Thomas Malone and Michael Malone. The settlement proceeds shall not be removed pending resolution of the dispute between the Malones and the balance of the plaintiffs as to the proper division of the proceeds[.]" Magistrate Order at ¶ 2.

The dispute over the distribution of the Settlement Proceeds centers around the share the Malones are entitled to receive. Significantly, the Proposed Settlement Order does not set forth the manner in which the Settlement Proceeds are to be distributed amongst the Plaintiffs. Apparently, however, the Settlement Proceeds are to be distributed among the individual plaintiffs on a pro rata basis determined in accordance with the number of units each individual plaintiff held in the partnership K–T Associates. Plaintiffs Brief at 2. In addition, each individual plaintiff was to receive out of the Settlement Proceeds the amount of monies they advanced to counsel for bringing this case. Plaintiffs Brief at 2 n. 2. The Plaintiffs contend the Malones are entitled to only the amount of money they advanced towards bringing this case. Plaintiffs Brief at 2 n. 2. Plaintiffs contend the Malones had initially agreed to participating in this case but at one point ceased contributing funds. *Id.* Plaintiffs contend the Malones agreed to the Proposed Settlement Order explicitly on the term that they are to receive only the amount they advanced to counsel and no other part of the Settlement Proceeds. *Id.*

---

**2.** At this time, the Proposed Settlement Order, although executed by all the parties, has not

been entered by the court.

The Malones contend they are entitled to a share of all the Settlement Proceeds.[3] Malones Brief at 1. The Malones argue the Settlement Proceeds must be distributed in accordance with state laws governing the dissolution of partnerships and the consequent distribution of partnership assets. Malones Brief at 6–11. Significantly, the Malones do not object to the terms of the Proposed Settlement Order. Malones Brief at 1. Rather, they simply disagree as to how the Settlement Proceeds are to be distributed amongst the partners of K–T Associates. *Id.*

The hearing as to these questions was conducted on the submissions of the parties. After considering the submissions, Magistrate Hedges issued a Letter–Order in which he raised the issue whether the court has jurisdiction over the dispute as to the distribution of the Settlement Proceeds. *See* Letter–Order, filed 15 January 1991. Magistrate Hedges adjourned the hearing on the distribution of the Settlement Proceeds and ordered the parties to file written submissions on the jurisdictional issue. *Id.*

After considering the submissions, Magistrate Hedges issued the Report and Recommendation on the jurisdictional issue. The Report and Recommendation stated the court should decline to exercise jurisdiction over the dispute. Report and Recommendation at 5. Magistrate Hedges reasoned the essence of the dispute centered around the parties' rights under the partnership agreement and the Uniform Partnership Laws of New Jersey, N.J.S.A. 42:1–1 *et seq.* Report and Recommendation at 2. Magistrate Hedges also reasoned that Rule 13(g) of the Federal Rules of Civil Procedure governed the jurisdictional question. Report and Recommendation at 3.

Rule 13(g) governs the assertion of cross-claims.[4] Magistrate Hedges characterized the dispute over how the Settlement Proceeds were to be distributed as, in essence, a cross-claim asserted by the Malones against the Plaintiffs. Report and Recommendation at 4–5. Magistrate Hedges concluded the "cross-claims" were not supported by ancillary jurisdiction because they did not arise out of the same transaction or occurrence as the RICO and securities law claims in the Complaint or the Amended Complaint. Report and Recommendation at 5. Accordingly, Magistrate Hedges recommended the court not retain jurisdiction to consider what the Malones are entitled to under the Proposed Settlement Order. *Id.*

## DISCUSSION

Plaintiffs object to the Report and Recommendation on the same grounds placed before Magistrate Hedges. The relevant question is therefore whether the court should retain jurisdiction to consider how the Settlement Proceeds should be distributed amongst the Plaintiffs.

### A. *Standard of Review*

Pursuant to 28 U.S.C. § 636(b)(1), Rule 72 of the Federal Rules of Civil Procedure and Rule 40(A) of the General Rules of the United States District Court for the District of New Jersey (the "General Rules"), a United States Magistrate may hear "dispositive" and "nondispositive" motions assigned by the district court. Section 636(b)(1) of Title 28 of the United States Code states a district court may "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to

---

**3.** In addition, the Malones contend the firm of Nagel & Rice should be disqualified from representing the Plaintiffs on the motions herein because of a conflict of interest. Because the Plaintiffs' obligations to the Report and Recommendation will be denied, there is no occasion to consider whether the firm of Nagel & Rice should be disqualified.

**4.** Rule 13(g) provides, in pertinent part:

> ... A pleading may state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or related to any property that is the subject matter of the original action....

Fed.R.Civ.P. 13(g).

the magistrate with instructions." 28 U.S.C. § 636(b)(1).

■ With regard to nondispositive motions, "the district court may modify the magistrate's order only if the district court finds that the magistrate's ruling was clearly erroneous or contrary to law." *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1113 (3d Cir.1986), *cert. denied*, 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987). With respect to dispositive motions, the district court must make a *de novo* determination of those portions of the magistrate's report to which a litigant has filed an objection. 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72(a); General Rule 40(D)(5); *see United Steelworkers of Am. v. New Jersey Zinc Co.*, 828 F.2d 1001, 1005 (3d Cir.1987). The *de novo* standard of review is applicable here because the case will be disposed of if the Proposed Settlement Order is adopted.

■ To the extent the Report and Recommendation is grounded upon Rule 13(g), it is rejected. As discussed above, Rule 13(g) addresses the assertion of cross-claims. Because no cross-claims have been asserted in this case, Rule 13(g) is inapposite. Therefore, the relevant issue is whether there is any other basis for adopting the Report and Recommendation's ultimate conclusion that the court should not retain jurisdiction.

B. *Jurisdiction to Enforce Settlement Agreements*

The Third Circuit has not affirmatively ruled on the issue of whether a court has inherent jurisdiction to enforce all settlement agreements in cases originally before the court. *Halderman v. Pennhurst State School & Hospital*, 901 F.2d 311, 317 (3d Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 140, 112 L.Ed.2d 107 (1990); *Langella v. Anderson*, 734 F.Supp. 185, 188 (D.N.J. 1990). The Circuit has, however, adopted the view that jurisdiction is retained at least when the settlement agreement was approved by the court and incorporated into an order of the court. *Halderman*, 901 F.2d at 317 (citing *Washington Hospital v. White*, 889 F.2d 1294, 1299 (3d Cir. 1989), and *McCall–Bey v. Franzen*, 777 F.2d 1178, 1188–89 (7th Cir.1985)).

Under *Halderman*, the crucial inquiry is whether the language of the order entering the settlement agreement can be used to infer that the court intended to retain jurisdiction. 901 F.2d at 317. Quoting the Seventh Circuit, the Third Circuit noted:

'... [W]e have expressed no doubt of the power of a district court to dismiss a lawsuit conditionally, retaining jurisdiction to effectuate terms of settlement agreed to by the parties. Nor do we think there is any magic form of words that the judge must intone in order to make the retention of jurisdiction effective. All that is necessary is that it be possible to infer that he did intend to retain jurisdiction—that he did not dismiss the case outright, thereby relinquishing jurisdiction.'

*Halderman*, 901 F.2d at 317 (quoting *McCall–Bey*, 777 F.2d at 1188).

■ The question of what circumstances are sufficient to give rise to the inference that jurisdiction is retained is determined on a case-by-case basis. In *McCall–Bey*, the settlement agreement provided that the parties could petition the court to enforce the settlement agreement. 777 F.2d at 1188–89. In *Washington Hospital*, the settlement agreement provided the parties shall not attempt to adjudicate further any issues in the case except to enforce the terms of the settlement agreement. 889 F.2d at 1299. Although the Circuit in *Halderman* stated all that is necessary was that the court approved of and entered the order adopting the settlement agreement, certain language in the settlement agreement suggests the court explicitly retained jurisdiction for a period of time. 901 F.2d at 318 ("Subject to paragraphs 15 and 16 below, the parties agree that as of the dates specified in those paragraphs, the District Court will mark this case closed and settled....").

It is evident from these cases that although the term "inference" is used, something more explicit is required for a court to retain jurisdiction. *See Langella*, 734

F.Supp. at 189. The facts in both *McCall–Bey* and *Washington Hospital* suggest jurisdiction is retained when the settlement agreement allows the parties to apply to the court to enforce the agreement. *McCall–Bey,* 777 F.2d at 1188–89; *Washington Hospital,* 889 F.2d at 1299. Here, the Settlement Agreement provides in several places that the parties may resort to the court to enforce the Settlement Agreement. *See* Proposed Settlement Order at ¶ 3(a) ("plaintiffs shall have the right to proceed *ex parte* to enforce the terms hereof by obtaining a personal judgment from this Court"); *id.* at ¶ 9 ("plaintiffs shall have the right to proceed *ex parte* upon application to this Court, to enforce the terms hereof"); *id.* at ¶ 10 ("In the event Computer Match defaults ... plaintiffs shall have the option to reinstate this action"). Consequently, it is clear from its terms that jurisdiction was retained to adjudicate any efforts to enforce the Proposed Settlement Order.

Plaintiffs' obligations to the Report and Recommendation do not, however, constitute an effort to enforce the Proposed Settlement Agreement. As noted above, the Proposed Settlement Agreement does not set forth how the Settlement Proceeds are to be distributed amongst the individual plaintiffs. Furthermore, the Malones do not dispute the terms of the Proposed Settlement Order. Malones Brief at 1. Although the Plaintiffs disagree with the Report and Recommendation, it is clear they wish to enforce the terms of the Proposed Settlement Order. Consequently, despite the Plaintiffs' attempts to characterize it as such, it cannot be said that this is a motion addressing the enforceability of the Proposed Settlement Order. In essence, the current dispute is collateral to the enforcement of the Proposed Settlement Order. Accordingly, the relevant issue is whether the court has retained jurisdiction to adjudicate the distribution of the Settlement Proceeds.

### C. Jurisdiction Over Collateral Issues

■ *Halderman* did not address the question of retention of jurisdiction over collateral issues. The Seventh Circuit in *McCall–Bey,* however, was faced with the question of when a court sitting in diversity or on the basis of a federal question retains jurisdiction to adjudicate a state law contract issue that arose out of the settlement of the case. 777 F.2d at 1186; *see United States v. Baus,* 834 F.2d 1114, 1127 n. 13 (1st Cir.1987) (declining to decide issue because independent basis for federal jurisdiction existed).

The Seventh Circuit declined to find an inherent power to adjudicate a purely state law controversy when a case has been dismissed from federal court. *McCall–Bey,* 777 F.2d at 1187. *Accord Londono v. City of Gainesville,* 768 F.2d 1223, 1227 (11th Cir.1985); *Fairfax Countywide Citizens Assoc. v. Fairfax County,* 571 F.2d 1299, 1303 (4th Cir.1978), *cert. denied,* 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978). In reaching this conclusion, the Circuit posed a scenario in which a suit in federal court due to diversity jurisdiction is dismissed because the parties settled. *McCall–Bey,* 777 F.2d at 1187. The hypothesized settlement agreement provided the defendant pay a sum of money to the plaintiff. *Id.* Years later, the plaintiff petitions the federal court to order the payment of the remaining balance due, which does not exceed the jurisdictional amount for diversity as set forth in 28 U.S.C. § 1332. *McCall–Bey,* 777 F.2d at 1187.

The Seventh Circuit rejected the notion that inherent jurisdiction existed to adjudicate the latter suit when the requirements for diversity jurisdiction are not met. The Circuit noted that if a court had the inherent jurisdiction to adjudicate all cases it formerly adjudicated to settlement, then the court would be forced to adjudicate the hypothetical plaintiff's petition, even though no independent basis for federal jurisdiction existed. *Id.* The Circuit stated:

> No statute confers such a jurisdiction and we hesitate to use so formless a concept as inherent power to give the federal courts an indefinite jurisdiction over disputes in which the federal interest is nonexistent. *If the parties want*

*the district judge to retain jurisdiction they had better persuade him to do so. Id.* (emphasis added) (citing *Gardiner v. A.H. Robins Co.,* 747 F.2d 1180, 1190 n. 13 (8th Cir.1984)); *see Langella,* 734 F.Supp. at 191 (discussing *McCall–Bey*).

Here, the question of the distribution of the Settlement Proceeds is governed by the partnership laws of the State of New Jersey. *See* N.J.S.A. 42:1–1 *et seq.* Subject matter jurisdiction over the claims in the Amended Complaint was presumably based on 28 U.S.C. §§ 1331 and 1337. Amended Complaint at 2. The Proposed Settlement Order does not expressly retain jurisdiction over collateral issues such as the one considered herein. Absent any indication that an independent basis for federal jurisdiction exists over the state law claims regarding the distribution of the Settlement Proceeds, there is no reason to retain jurisdiction when jurisdiction was not otherwise expressly retained to adjudicate this issue.[5] Accordingly, the Report and Recommendation is adopted to the extent it recommends the court not exercise jurisdiction over this dispute.

D. *Release of Funds Held in Escrow*

Plaintiffs move to vacate the restraints on the distribution of the monies held in escrow in anticipation of the settlement of this case. Plaintiffs contend the escrow was created solely for the purposes of the 18 January hearing to determine whether the court had jurisdiction to adjudicate the dispute over the distribution of the Settlement Proceeds. Plaintiffs Brief at 8. The Malones seek to continue the restraints until the dispute as to the distribution of the Settlement Proceeds is resolved. Malones Brief at 3.

Because jurisdiction is not retained as to the dispute over the distribution of the Settlement Proceeds, there is no jurisdiction to continue to enforce the restraints on the funds held in escrow. Those restraints were imposed only to preserve the status

quo while Magistrate Hedges was considering the jurisdictional issue. Accordingly, Plaintiffs' motion to vacate the restraints is granted. The Malones may seek relief in state court to prevent disbursement of the Settlement Proceeds prior to resolution of the dispute as to distribution.

CONCLUSION

For the reasons set forth above, the Report and Recommendation is adopted only to the extent it recommends the court has no jurisdiction to adjudicate the dispute over the distribution of the Settlement Proceeds. In addition, Plaintiffs' motion to vacate the restraints on the funds held in escrow is granted.

---

5. The Settlement Proceeds amount to $320,-000.00. *See* Proposed Settlement Order. All of the Plaintiffs, except for Nathan Finkelstein, Mildred Schultz and K–T Associates, appear to be residents of New Jersey. Amended Complaint at ¶¶ 3–13. Consequently, there would be no diversity jurisdiction over this state law dispute if the Malones brought suit against the Plaintiffs. *See* 28 U.S.C. § 1332.