Julia C. POVEROMO–SPRING, Joseph J. Spring, Jr., Plaintiffs,

v.

EXXON CORPORATION, John B. Sekel, M.D., Exxon Research & Engineering Co., Defendants.

Civil Action No. 96–398 (JAG).

United States District Court, D. New Jersey.

June 26, 1997.

Stuart K. Santiago, James J. Marchwinski, on the Brief, Rahway, NJ, for Plaintiffs.

Stephen Reid Knox, Kummer, Knox, Naughton & Hansbury, P.C., Parsippany, NJ, for Defendant John B. Sekel, M.D.

Patrick J. Conlon, Joseph T. Walsh, III, Exxon Law Department, Florham Park, NJ, for Defendants Exxon Corp. and Exxon Research and Engineering Co.

## OPINION

GREENAWAY, District Judge.

### *INTRODUCTION*

This matter comes before me on plaintiffs' objections to Magistrate Judge Joel A. Pisano's Report and Recommendation of September 30, 1996.[1] All papers submitted in support of and in opposition to the objection have been considered. This Court, after engaging in a de novo review of the Report and Recommendation, grants, in part, and denies, in part, plaintiffs' motion.[2] 28 U.S.C. § 636(b)(1) (1990); Fed.R.Civ.P. 72(b); Local Rules 40 A 3 & 40 D 5.

Complaints may be dismissed when a plaintiff fails to state a claim upon which relief can be granted. Fed. R.Civ. P. 12(b)(6). In reaching this determination, courts are limited to the facts as stated in the complaint. *Hauptmann v. Wilentz*, 570 F.Supp. 351, 364 (D.N.J.1983). The facts are accepted as true and viewed in the light most

---

1. Plaintiffs do not appeal Magistrate Judge Pisano's rulings on their common law breach of contract claim.

2. De novo review is mandated where the matter at issue is of a dispositive nature, as in this instance, wherein a Motion to Dismiss is under consideration. *Sherman v. Wellbrock*, 761 F.Supp. 1135, 1141 (D.N.J.1991).

favorable to the plaintiff. *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081–82, 31 L.Ed.2d 263 (1972); *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir.1991). No claim is dismissed unless the defendants demonstrate "beyond a doubt that plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

Plaintiff Julia Poveromo–Spring ("Poveromo–Spring") started her employment with Exxon Research and Engineering Company ("Exxon Research") in 1965. In 1988, she transferred to Exxon Corporation ("Exxon").[3] Plaintiff remained employed at Exxon as of the date of the Report and Recommendation. Her son, co-plaintiff Joseph J. Spring, Jr. ("Spring"), worked for Exxon from 1991 to 1993.

On December 26, 1995, the plaintiffs brought a New Jersey state civil action against Exxon, Exxon Research, John B. Sekel, M.D. ("Sekel"), a physician employed by Exxon, the Independent Laboratory Employees' Union, Inc. (the "Union") and approximately three dozen co-workers and supervisors. The eighteen count complaint alleged that defendants violated the *Americans with Disabilities Act*, 42 U.S.C. § 12112(a)(5)(A) (1990) ("ADA") and the *New Jersey Law Against Discrimination*, N.J. Stat. Ann. § 10:5–4.1 (West 1993) ("LAD"). The remaining counts alleged breach of and interference with the collective bargaining agreement, breach of the implied covenant of good faith and fair dealing, tortious interference with a contract, intentional infliction of emotional distress, defamation, violation of privacy and wrongful discharge.

Defendants removed plaintiffs' action to this Court in January of 1996. Plaintiffs subsequently filed a consent order dismissing their claims against the Union and all individual defendants, except Sekel. Plaintiffs jointly abandoned their breach of the implied covenant of good faith and fair dealing claim. Poveromo–Spring abandoned her tortious interference with contract claim and Spring abandoned his breach of contract claim.

Thus, Poveromo–Spring's remaining claims are against (1) Exxon for alleged violations of the ADA, LAD, right to privacy, breach of an employment contract, intentional infliction of emotional distress, wrongful disclosure of confidential medical information and breach of contract; (2) Exxon Research for alleged violations of the ADA and the LAD, intentional infliction of emotional distress and breach of contract; and (3) Sekel for alleged violations of the ADA, LAD, intentional infliction of emotional distress and defamation.

Plaintiff Spring's remaining claims are against Exxon for alleged violations of the ADA, LAD and for intentional infliction of emotional distress. Spring asserts no causes of action against Exxon Research or Sekel.

The three defendants moved for an Order of Dismissal as to the remaining counts and the matter was referred to Magistrate Judge Joel A. Pisano for a Report and Recommendation.

### POVEROMO–SPRING'S CLAIMS

The complaint alleges facts which arise out of instances which took place both during and subsequent to Poveromo–Spring's July 1991 summer vacation. While on vacation, Poveromo–Spring took ill and her doctor diagnosed her with an unspecified brain ailment. As a result of the illness, Poveromo–Spring missed work for approximately three months in the late summer and fall of 1991. Poveromo–Spring asserts that her malady classifies her as a "handicapped person" under the LAD and a "qualified individual with a disability" under the ADA.[4]

---

**3.** Exxon Corporation was improperly captioned in plaintiffs' complaint as Exxon Chemical Company and Exxon Chemical Americas.

**4.** The LAD defines "handicapped" as

 suffering from physical disability, infirmity, malformation or disfigurement which is caused by bodily injury, birth defect or illness

including epilepsy, and which shall include, but not be limited to, any degree of paralysis, amputation, lack of physical coordination, blindness or visual impediment, deafness or hearing impediment, muteness or speech impediment or physical reliance on a service or guide dog, wheelchair, or other remedial appliance or device, or from any mental, psycholog-

On or about October 21, 1991, Poveromo–Spring presented Exxon with a note from her personal physician. The note detailed temporary restrictions which were to be imposed on Poveromo–Spring's working environment upon her return. For example, an office with a window, limited work hours and access to an elevator. Poveromo–Spring returned to work on October 28, 1991.

Upon her return to work, Poveromo–Spring asserts that Richard Dooley ("Dooley"), an Exxon Financial Supervisor, refused to make the recommended accommodations. Dooley set out his reasons for refusal in letters sent to the manager of Financial Services, the Human Resources Department and others.

Poveromo–Spring voiced her concerns about Dooley's conduct to Exxon's legal department, Union officials and the company nurse. They, in turn, suggested that Poveromo–Spring remove herself from Dooley's supervision by transferring out of the Financial Division. Poveromo–Spring alleges that, under duress, she accepted this suggestion and submitted a written transfer request. On November 12, 1991, Exxon transferred Poveromo–Spring to the Scheduling Office, a transfer which Poveromo–Spring claims is a demotion.

Poveromo–Spring asserts that Dooley's actions violate the ADA and the LAD and Exxon likewise violated the statutes when it approved Dooley's actions.

Fran Sciacchitano ("Sciacchitano") supervised Poveromo–Spring in the Scheduling Office. Poveromo–Spring, who had previously worked for Sciacchitano from April 1988 to September 1990, states that during that time Sciacchitano evaluated Poveromo–Spring favorably and promoted her. Poveromo–

Spring alleges that after Sciacchitano learned of her disability, Sciacchitano's favorable conduct towards her changed into conduct which could only be described as hostile and harassing. Sciacchitano's conduct towards Poveromo–Spring allegedly caused Poveromo–Spring's co-workers to treat her similarly, *i.e.*, with hostility.

On February 3, 1992, Poveromo–Spring suffered a seizure at work. She proffers that the seizure resulted in a heightened degree of mistreatment from Sciacchitano and others.

Poveromo–Spring alleges that her complaints of mistreatment went unanswered by the legal department, Human Resources and other Exxon employees. She asserts that their inaction violates the ADA and the LAD.

Poveromo–Spring further alleges that on the 7th and 24th of October 1991, defendant Sekel discussed her medical condition with her personal physician and separately with various Exxon employees. She further asserts that Exxon approved the conversations without her consent and with the intention of inflicting emotional harm upon her. As such, she seeks relief from Sekel for intentional infliction of emotional duress.

In May of 1992, Poveromo–Spring's complaints of harassment, mistreatment and failure to grant reasonable accommodations caused Exxon to transfer her from the Scheduling Office to the Library and Media Center of the Technology Services Division.[5] As with the previous assignment, Poveromo–Spring asserts that her superiors and co-workers harassed and mistreated her and failed to provide reasonable accommodations for her disability. Additionally, her superiors and co-workers defamed her work perfor-

---

ical, physiological or neurological conditions which prevents the normal exercise of any bodily or mental functions or is demonstrable, medically or psychologically, by accepted clinical or laboratory diagnostic techniques.

N.J. Stat. Ann. § 10:5–5 q (West 1993). The ADA defines a "qualified individual with a disability" as

an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this subchapter, consider-

ation shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

42 U.S.C. § 12111(8) (1990).

5. Poveromo–Spring worked in the Technology Services Division as of the date of Magistrate Judge Pisano's Report and Recommendation.

mance, instructed her to seek counseling, delayed her promotion and assigned her to menial tasks. Poveromo–Spring asserts that all of these actions violate the ADA and the LAD and were done with Exxon's approval.

She further proffers that during both assignments Sekel improperly conveyed her medical diagnosis, including an incorrect HIV diagnosis, to her superiors and co-workers.

### SPRING'S CLAIMS

Spring's civil action is premised upon his belief that Exxon discriminated against him because of his relationship with Poveromo–Spring.

Spring claims that from December 1989 to November 1993, the Federal Bureau of Investigation ("FBI") and the United States Attorney's Office ("USAO"), conducted a fraud investigation into an Exxon laboratory. From April 1988 to September 1990, Poveromo–Spring and Sciacchitano worked in this laboratory together. Poveromo–Spring reported to Sciacchitano. Per Spring, Sciacchitano, a target of the investigation, was cleared of any misconduct.

Spring asserts that agents from the United States Department of Defense and the FBI conducted a home interview of his mother. The interview attempted to elicit information about any illegal activities at the laboratory. Spring asserts that his mother was the only Exxon employee to receive a home visit from government agents. Spring further states that as a result of the interview, Sciacchitano continually harassed, and discriminated against, Poveromo–Spring. As a result of this treatment, Poveromo–Spring asked for and received a departmental transfer. Shortly before the transfer Sciacchitano told Poveromo–Spring that she "[would] get even with her".

Spring states that on May 20, 1991, Sciacchitano and Exxon hired him to work for Exxon and on December 31, 1993, (approximately a month after the government ended its investigation) terminated his employment. Although Sciacchitano asserts Spring's termination occurred because of financial considerations, Spring proffers that he lost his position because Poveromo–Spring is his mother. As proof, the complaint alleges that within one month after his (Spring's) termination, defendants hired certain persons from temporary agencies to replace him. These allegations provide the basis for Spring's ADA, LAD and intentional infliction of emotional distress claims.

### Exxon Corporation

### The LAD Claims

#### Poveromo–Spring

■ The dispositive issue here is whether a two- or six-year statute of limitations is applicable to LAD claims.

Poveromo–Spring and Spring filed their complaint on December 26, 1995. If a two-year statute of limitations applies, only discriminatory actions which occurred between the filing date and December 26, 1993 could provide a basis for plaintiff's relief, barring any exceptions.

Magistrate Judge Pisano recommends dismissing Poveromo–Spring's LAD claims, which are based on facts arising before July 27, 1993, pursuant to his finding that the claims are time-barred under *Standard v. Vas,* 279 N.J.Super. 251, 255–56, 652 A.2d 746 (App.Div.1995), which imposes a two-year statute of limitations. The Magistrate Judge also recommends dismissal of claims based on facts occurring between July 27, 1993 and December 26, 1993, pursuant to his finding that such claims are time-barred under *Montells v. Haynes,* 133 N.J. 282, 292, 627 A.2d 654 (1993). Plaintiffs argue that a six-year statute of limitations is applicable.

In *Montells,* the Supreme Court of New Jersey held that LAD claims based on events occurring after July 27, 1993 (the date of the *Montells* opinion) are governed by a two-year statute of limitations. The Court stated that

[a]fter carefully considering the purposes of LAD and of statutes of limitations, we conclude that a single statute of limitations should apply to all LAD claims. Finding that injuries under LAD are most like personal-injury claims, we further conclude that the two-year personal-injury statute of limitations should apply. We recognize that until today, the applicable statute of limitations has been unclear. In the inter-

est of justice, we believe that our decision should apply prospectively only.

133 N.J. at 286, 627 A.2d 654. Thus, it is undisputed that under *Montells,* Poveromo–Spring's claims based on events arising after July 27, 1993 fall within the confines of the two-year statute of limitations. However, the query remains as to the claims based on events occurring before July 27, 1993.

In deciding the above query, I look to two New Jersey statutes, both of which were effective at all relevant times. The first, N.J. Stat. Ann. § 2A:14–1 (West 1993), states that:

> Every action at law for trespass to real property, for any tortious injury to real or personal property, for taking, detaining, or converting personal property, for replevin of goods or chattels, for any tortious injury to the rights of another not stated in sections 2A:14–2 and 2A:14–3 of this Title, or for recovery upon a contractual claim other than one which concerns the trade or merchandise between merchant and merchant, their factors, agents and servants, shall be commenced within 6 years next after the cause of any such action shall have accrued. . . .

The second, N.J.Stat. Ann. § 2A:14–2 (West 1993), states that:

> Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this state shall be commenced within 2 years next after the cause of any such action shall have accrued.

Plaintiff argues that the six-year statute of limitations is applicable here. The Court disagrees. I am persuaded by the high court's reasoning in reaching its decision in *Montells* to apply a two-year statute of limitations.

■ The critical factor in the Supreme Court's decision to apply the two-year statute of limitations is its finding that LAD claims are more like an "injury to the person" under § 2A:14–2, than injuries arising from breach of contract or from "any tortious injury to the rights of another not stated" under § 2A:14–1. 133 N.J. at 286, 627 A.2d 654. This finding, while not solidified until *Mon-*

*tells,* nevertheless evidences New Jersey's focus on the nature of the injury in determining which limitation period is appropriate.

Since it has been decided that the nature of a LAD claim is that of injury to the person, this Court concludes that such injuries which occurred before. *Montells* should be governed by § 2A:14–2's two-year statute of limitation. The two-year statute of limitations applies equally to claims arising after July 27, 1993, as well as to those claims arising before July 27, 1993. Thus, the two-year statute of limitations is applicable to Poveromo–Spring's LAD claim.

■ Alternatively, Poveromo–Spring attempts to circumvent the two-year statute of limitations by arguing (1) a "continuing violation" theory of the LAD; (2) the existence of a "hostile work environment"; and (3) that the statute of limitations must be tolled due to her "mental affliction." Plaintiff's continuing violation theory permits the relief she seeks.

■ The "continuing violation" theory is a product of federal rulings whereby a Title VII plaintiff may maintain a "claim for discriminatory conduct that began prior to the filing period if he can demonstrate that the act is part of an ongoing practice or pattern of discrimination of the defendant." *West v. Philadelphia Elec. Co.,* 45 F.3d 744, 754 (3d Cir.1995). The plaintiff must demonstrate that at least one discriminatory act occurred within the statute of limitations and that the act was not an isolated or sporadic occurrence. 45 F.3d at 754–55 (The distinction is between an isolated, intermittent act and a persistent, on-going pattern). As stated in *Berry v. Board of Supervisors of L.S.U.,* 715 F.2d 971, 979 (5th Cir.1983), *cert. denied,* 479 U.S. 868, 107 S.Ct. 232, 93 L.Ed.2d 158 (1986), the plaintiff must demonstrate a "series of related acts, one or more of which falls within" the required time period.

Plaintiff proffers that this theory is applicable to her LAD claim pursuant to *Grigoletti v. Ortho Pharmaceutical Corp.,* 118 N.J. 89, 97, 570 A.2d 903 (1990), which states that New Jersey courts "in a variety of contexts involving allegations of unlawful discrimination, . . . [look] to federal law as a key source

of interpretive authority." This analysis is persuasive.

Throughout the complaint Poveromo–Spring alleges that she suffered continuous harm based on defendants' actions. To apply the continuing violation theory properly plaintiff must have pled this theory specifically. In the Court's view, Poveromo–Spring has validly asserted a continuing violation; thus, she has met the threshold required for an exception to the two-year statute of limitations. Poveromo–Spring's allegations that the defendants engaged in a pattern of ongoing discrimination directed towards her solely because of her disability is sufficient to satisfy the continuing violation requirement. The motion to dismiss Poveromo–Spring's LAD claim is denied.

### *Spring*

The Magistrate Judge recommends dismissal of Spring's "association" based LAD claims. This recommendation is premised upon Magistrate Judge Pisano's finding that the LAD does not provide relief for such claims. Magistrate Judge Pisano also recommends dismissal of Spring's "retaliation" based LAD claim. This conclusion is premised upon Spring's failure to allege that he engaged in the requisite "protected conduct."

While the LAD does not provide for association based claims, it does make it unlawful

> [f]or any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act.

N.J. Stat. Ann. § 10:5–12 d (West 1993).

▆ To establish a prima facie case of retaliation, Spring must show that: (1) he or Poveromo–Spring engaged in protected conduct, as defined in the above paragraph, and Exxon knew of his conduct; (2) Exxon unlawfully retaliated against him because of its knowledge; and (3) his participation in the protected conduct was the impetus for Exxon's retaliation. *Craig v. Suburban Cablevision, Inc.,* 140 N.J. 623, 660 A.2d 505 (1995).

In *Craig,* the court addressed the issue of standing as it applies to retaliatory discharges in violation of the LAD. 140 N.J. at 625, 660 A.2d 505. The plaintiffs were employed in defendant's door-to-door sales department. *Id.* at 626, 660 A.2d 505. The department, consisting of five employees, was small and close-knit. Three of the plaintiffs were related to each other and the remaining two were close friends. *Id.*

Plaintiff Susan Chapman ("Chapman") filed a discrimination suit against defendant which alleged that Suburban failed to promote her due to her gender and physical handicap. 140 N.J. at 626, 660 A.2d 505. Chapman's mother, one of the five plaintiffs, actively aided her daughter by testifying as a witness. *Id.* at 630, 660 A.2d 505. The other plaintiffs were not actively involved in the suit. *Id.* The case eventually settled; however, before the settlement agreement was entered, defendant terminated all five employees. *Id.* at 627, 660 A.2d 505. All five employees sued for relief under the LAD.

The New Jersey Supreme Court held that the remaining plaintiffs (Chapman having settled) had standing to maintain a retaliatory discharge claim against defendant. In reaching this holding, the court was "mindful not only of the rule favoring liberal construction of the complaint, but also of the legislative direction that the LAD 'shall be liberally construed in combination with other protections available under the laws of [New Jersey].'" 140 N.J. at 629, 660 A.2d 505 (citations omitted). The court, relying heavily on legislative intent, further held that

> the clear public policy of this State is to eradicate invidious discrimination from the workplace.

140 N.J. at 630–31, 660 A.2d 505. Of particular importance to the case here, is the New Jersey court's finding that the non-active employees could assert an LAD retaliatory discharge claim. In so holding, the court opined that "[t]o deny standing to the co-workers would encourage employers to take reprisals against the friends, relatives, and

colleagues of an employee who have asserted an LAD claim....In this context, we doubt that the Legislature would want us to bar the aggrieved co-worker from the courthouse by denying them standing to sue." 140 N.J. at 630–31, 660 A.2d 505.

■ Spring asserts that when Poveromo–Spring sought to enforce her rights as a handicapped person, *i.e.,* engaged in protected conduct, her actions prompted the defendants to retaliate against him as a means of "getting even" with Poveromo–Spring. He supports this claim with his belief that his once favorable employment evaluations ended after his mother became ill.

Based on this Court's interpretations of New Jersey precedent and on the facts as stated in the complaint, I find that such facts, if proven, could support Spring's claim of retaliatory discrimination. Defendant's motion to dismiss Spring's retaliation based claim is denied. Defendant's motion to dismiss Spring's association based LAD claim is granted.

*The ADA Claims* [6]

### Spring

Magistrate Judge Pisano recommends dismissal of Spring's association based ADA claim as well as his retaliation based claim. The former is recommended for dismissal pursuant to the Magistrate Judge's finding that Spring is unable to allege facts which establish a link between his termination and his mother's disability. The latter is premised upon the Magistrate Judge's finding that Spring fails to allege that he engaged in protected conduct. For the reasons expressed above regarding the LAD claim, I deny defendants' motion to dismiss Spring's ADA retaliation claim.[7]

As for the association based claim, the Code prohibits "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4) (1990).

The complaint alleges that plaintiff received demeaning and non-intellectual tasks to perform solely because of his association with Poveromo–Spring, a handicapped person. He further alleges that his complaints to management about this practice went unanswered and that as a result he suffered emotional distress and mental anguish.

Based on the facts, as alleged in the complaint, I find that these facts, if proven to be true, may support a claim for association based discrimination. The motion to dismiss Spring's association based ADA claim is denied.

*The Intentional Infliction of Emotional Distress Claim*

### Poveromo–Spring

Poveromo–Spring alleges that Exxon Corporation intended to cause her severe emotional distress when it terminated her son's employment and wrongfully disclosed her Acquired Immune Deficiency ("AIDS") misdiagnosis. The Magistrate Judge found that plaintiff fails to allege facts sufficient to satisfy the elements of intentional infliction of emotional distress. Dismissal is recommended.

■ To succeed on a claim for intentional infliction of emotional distress, under New Jersey law, Poveromo–Spring must show that (1) the defendant acted recklessly or intentionally; (2) defendant's conduct was extreme and outrageous; (3) defendant's ac-

---

6. Magistrate Judge Pisano dismissed Poveromo–Spring's ADA claims for alleged discriminatory conduct that took place before July 26, 1992, the effective date of the ADA, based on his finding that the claims were time-barred. Poveromo–Spring does not appeal this ruling, nor does Exxon seek dismissal of Poveromo–Spring's ADA claims based on alleged discriminatory conduct that took place after July 26, 1992. Therefore, this Court does not rule on the issue of Povero-

mo–Spring's ADA claims. Magistrate Judge Pisano's ruling is undisturbed.

7. Retaliation falls under 42 U.S.C. § 12203 (1990) which states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this chapter."

tions were the proximate cause of her distress; and (4) she actually suffered severe emotional distress. *McNemar v. Disney Store, Inc.*, 91 F.3d 610, 622 (3d Cir.1996). Poveromo–Spring carries a heavy burden in proving such an action in light of the fact that the "limited scope of the tort tolerates many kinds of unjust, unfair and unkind conduct." *Bishop v. Okidata, et al.*, 864 F.Supp. 416, 427 (D.N.J.1994). However, this is a motion to dismiss; consequently, while it is "extremely rare to find conduct in the employment context which will rise to the level of outrageousness necessary to provide a basis for recovery" the facts alleged in the complaint require that this claim proceed. 864 F.Supp. at 427 (citations omitted).

■ Defendants seek to dismiss Poveromo–Spring's intentional infliction of emotional distress claim arguing that the intentional disclosure of an incorrect AIDS diagnosis "falls short of the kind of 'extreme' and 'outrageous' conduct that must be present to support such a claim." This Court disagrees with defendants' assertion; however, this count will be dismissed due to plaintiff's failure to state a claim upon which relief can be granted.

■ Count One of the complaint alleges that Exxon denied her request for reasonable accommodations; Count Six alleges that in May of 1992, Exxon employees continuously harassed and discriminated against Poveromo–Spring; and Poveromo–Spring also alleges that the parties improperly discussed her AIDS misdiagnosis.

A myriad of diseases carry with them social stigma, for example, syphilis or even cirrhosis of the liver. If intentionally disclosed, while a misfortune, the physician's conduct would likely not fall within the realm of extreme and outrageous. AIDS is different. It has a stigma attached to it unparalleled by any other disease. AIDS sufferers are often shunned and ignored, and an intentional disclosure of such a diagnosis, albeit an improper diagnosis, could certainly fall within the framework of extreme and outrageous.

Unfortunately, plaintiff does not substantiate her claim that: (1) Sekel knew of her misdiagnosis, and (2) that if he knew, he disclosed it to others. Plaintiff merely states that Sekel and her personal physician engaged in a conversation. Without more, this claim is insufficient to survive a motion to dismiss.

Poveromo–Spring's second basis for her intentional infliction of emotional distress claim also fails to support her claim.

■ Under New Jersey law, a party may succeed on this claim if the defendant's "conduct exceeded all bounds usually tolerated by decent society and where the actions are especially calculated to cause and do cause mental distress of a very serious kind." *Porta v. Rollins Environmental Services (NJ), Inc.*, 654 F.Supp. 1275, 1285 (D.N.J.1987) (citations omitted). Few cases meet this standard; however, when a termination is "accompanied, or preceded, by harassing conduct courts have permitted the claim to go to the jury." *Borecki v. Eastern Int'l Management Corp.*, 694 F.Supp. 47, 61 (D.N.J.1988); *see also McNemar v. The Disney Store*, 91 F.3d 610, 623 (3d Cir.1996) (termination of employment with evidence of harassment, supports a claim of intentional infliction of emotional distress).

The Court agrees with the Magistrate Judge's finding that "[Poveromo–Spring] has failed to allege facts that would demonstrate such a claim."

### CLAIMS AGAINST SEKEL

Only Poveromo–Spring asserts claims against Dr. Sekel, a physician employed by Exxon.[8]

*The LAD Claim*

It shall be unlawful employment practice, or, as the case may be, an unlawful discrimination:

. . . .

e. For any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of

---

8. Magistrate Judge Pisano dismissed Poveromo–Spring's ADA claim against Sekel pursuant to his finding that Sekel, an individual, does not meet the ADA's definition of "employer." Conse-quently, an ADA claim cannot be brought against him. Poveromo–Spring does not appeal this ruling and this Court will not disturb Magistrate Judge Pisano's ruling.

the acts forbidden under this act, or to attempt to do so.

N.J. Stat. Ann. § 10:5–12 (West 1993).

[14] The issue is whether this paragraph of the LAD provides a cause of action against an individual employee accused of discriminatory conduct towards another employee. The LAD does not permit this type of action unless the accused individual employee has direct supervisory authority over his or her fellow employee, *i.e.*, the victim. The Magistrate Judge recommends dismissal based on his finding that Sekel had no such authority over Poveromo–Spring. The Court agrees.

In *Tyson v. CIGNA*, 918 F.Supp. 836, 837 (D.N.J.1996), the court held that the LAD:

(1) does not impose liability on non-supervisory employees, and (2) imposes liability on supervisory employees only to the extent that the supervisory employee affirmatively engages in discriminatory conduct while acting in the scope of employment. A supervisory employee's omissions, acquiescence, passivity or other failure to act will not support a claim under the [LAD].

This claim is dismissed since plaintiff fails to allege, nor does it appear, that Sekel had supervisory authority over Poveromo–Spring.

*Intentional Infliction of Emotional Distress*

The Magistrate Judge finds that Sekel's conduct falls short of the requisite extremeness and outrageousness needed to satisfy the elements of intentional infliction of emotional distress and recommends dismissal. For the reasons expressed above in the discussion of Poveromo–Spring's intentional infliction of emotional distress against Exxon, *supra* at 227–228, the Court agrees. The motion to dismiss this claim is granted.

*Wrongful Disclosure of Confidential Medical Information*

Poveromo–Spring seeks to amend her complaint to add a claim for wrongful disclosure of confidential medical information.

Before the Magistrate Judge, in response to this motion and in support of his motion to dismiss, Sekel relied upon Poveromo–Spring's deposition testimony. At the deposition, Poveromo–Spring stated that she lacked evidence which indicated that Sekel was aware of the AIDS misdiagnosis. The Magistrate Judge reviewed copies of Poveromo–Spring's medical records.

Having relied on matters outside of the pleadings, the Magistrate Judge converted the motion to dismiss into one for summary judgment. He found that no genuine issue as to a material fact existed and granted Sekel's summary judgment motion.

Federal Rule of Civil Procedure 12(b) states that "[i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *See New York v. U.S.*, 942 F.2d 114 (2d Cir.1991); *Wiley v. Hughes Capital Corp.*, 746 F.Supp. 1264, 1275 (D.N.J.1990).

Pursuant to Rule 56, summary judgment shall be rendered if the pleadings, depositions, interrogatories, answers, admissions, and affidavits demonstrate that there exists no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c).

[15] It is undisputed that Dr. Printz's, Poveromo–Spring's personal physician, medical records erroneously indicated that Poveromo–Spring was AIDS/HIV positive and that Dr. Printz had discussions with Sekel regarding Poveromo–Spring's medical condition. However, Poveromo–Spring points to no evidence which supports her claim that Sekel disclosed, or even knew of the erroneous diagnosis. Consequently, this Court finds that Magistrate Judge Pisano properly granted Sekel's motion for summary judgment.

*CLAIMS AGAINST EXXON RESEARCH*

[16] Magistrate Judge Pisano recommends dismissal of all claims against Exxon Research because "without alleging an employment relationship with Exxon Research during the relevant period of alleged discrim-

ination, Poveromo–Spring may not maintain claims against Exxon Research."

In response, Poveromo–Spring argues that pursuant to *Baliko v. Stecker*, 275 N.J.Super. 182, 645 A.2d 1218 (App.Div.1994), failure to allege an employment relationship is not fatal to her claim. This assertion is not correct.

*Baliko* is a sexual harassment action brought pursuant to the LAD. The defendants are the International Union of Operating Engineers, Local 825 and two of its members. The court held that the defendants, although not employers of the plaintiffs, could be liable for sexual harassment because the LAD specifically imposes liability on labor organizations and its aiders and abettors. *Baliko*, 275 N.J.Super. at 191, 645 A.2d 1218.

This is quite different from Poveromo–Spring's proposition. I can find no provision in the LAD which would impose liability on Exxon Research, a non-labor organization, and a non-employer of Poveromo–Spring.

Additionally, I concur with Magistrate Judge Pisano's determination that a two-year statute of limitations is applicable pursuant to N.J.Stat. Ann. § 2A:14–2 (West 1993). Thus, plaintiff's discrimination or tort claim arising out of her earlier employment with Exxon Research is time barred.

The motion to dismiss Poveromo–Spring's LAD claim against Exxon Research is granted.

### CONCLUSION

Accordingly, and for the reasons expressed above, Exxon's motion to dismiss Poveromo–Spring's LAD claim is denied; its motion to dismiss Spring's LAD retaliation based claim is denied, but the association based claim may not proceed; Spring's association and retaliation based ADA claims may proceed; and the motion to dismiss Poveromo–Spring's intentional infliction of emotional distress claim is granted. Sekel's motion to dismiss Poveromo–Spring's LAD, wrongful disclosure of medical information and intentional infliction of emotional distress claims is granted. Exxon Research's motion to dis-

miss all of Poveromo–Spring's claims is granted.

