660 A.2d 505

WILLIAM CRAIG, ELLEN CHAPMAN, WILLIAM DENINO AND ELLEN MARSILLO, PLAINTIFFS–RESPONDENTS, AND SUSAN CHAPMAN, PLAINTIFF, v. SUBURBAN CABLEVISION, INC., FRANK DEJOY, JANE BULMAN, AND GREGORY VANDERVORT, DEFENDANTS–APPELLANTS.

Argued February 27, 1995—Decided July 13, 1995.

*Jerrold J. Wohlgemuth* argued the cause for appellants (*Apruzzese, McDermott, Mastro & Murphy,* attorneys).

*Gerald Jay Resnick* argued the cause for respondents.

The opinion of the Court was delivered by

POLLOCK, J.

The sole issue on this appeal is whether plaintiffs, William Craig, Ellen Chapman, William Denino, and Ellen Marsillo, have standing to sue Suburban Cablevision, Inc. (Suburban) and the individual defendants for a retaliatory discharge in violation of *N.J.S.A.* 10:5–12d. The Law Division ruled that plaintiffs did not have standing, and the Appellate Division reversed. 274 *N.J.Super.* 303, 644 *A.*2d 112 (1994). We granted defendants' motion for leave to appeal, 139 *N.J.* 181, 652 *A.*2d 171 (1994), and affirm. We hold on the facts of this case that plaintiffs, as co-workers or relatives of an employee who sued their common employer under the Law Against Discrimination (LAD), *N.J.S.A.* 10:5–1 to –42, may maintain an action for retaliatory discharge.

–I–

Because the matter arises on defendants' motion to dismiss, we accept as true the facts alleged in the complaint. *Rieder v. Department of Transp.,* 221 *N.J.Super.* 547, 552, 535

*A.*2d 512 (App.Div.1987). The test is whether the alleged facts "suggest" a cause of action. *Velantzas v. Colgate–Palmolive Co.,* 109 *N.J.* 189, 192, 536 *A.*2d 237 (1988). Plaintiffs are entitled to every reasonable inference in their favor. A reviewing court must " 'search[ ] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim....' " *Printing Mart–Morristown v. Sharp Elecs. Corp.,* 116 *N.J.* 739, 746, 563 *A.*2d 31 (1989) (quoting *Di Cristofaro v. Laurel Grove Memorial Park,* 43 *N.J.Super.* 244, 252, 128 *A.*2d 281 (App.Div.1957)).

*N.J.S.A.* 10:5–12d makes it unlawful for an employer to take reprisals against any person who "filed a complaint, testified or assisted in any [LAD] proceeding," or who "aided or encouraged any other person in the exercise or enjoyment of[ ] any right granted or protected by [the LAD]." The issue is whether plaintiffs have alleged sufficient facts to establish their standing to assert a violation of that section. Although the record contains material other than the complaint, both the Law Division and the Appellate Division treated the issue of standing as arising on a motion to dismiss. So do we.

–II–

Plaintiffs worked in Suburban's door-to-door sales department. Susan was the supervisor, and Ellen, her mother, was her superior and the department manager. Ellen Marsillo is Susan's sister. Craig and Denino, although not related to Susan, were her close friends.

The case arises out of Suburban's alleged failure to consider Susan for a promotion. In a discrimination claim filed in the United States District Court for the District of New Jersey, Susan alleged that Suburban failed to consider her because of her gender and physical handicap. The parties settled that action.

Before settling Susan's federal court action, Suburban instituted a number of changes in the department. These changes included: compelling sales agents to visit "never" customers (*i.e.,* customers

identified as being statistically unlikely to order cable television); taking away the pass keys of department employees, thereby depriving the employees of access to the office on weekends and in the evenings; removing "cancelled installation sheets," which were a consistently reliable source for prospective sales, from the door-to-door sales department and instead furnishing those sheets to the telemarketing department; limiting the quantity of promotional materials available to sales agents for use in marketing; and threatening to install a time clock. As Susan's lawsuit progressed, Suburban allegedly escalated its harassment.

On July 14, 1989, defendant Frank DeJoy, vice-president and general manager of Suburban, called a meeting with the department's sales staff. At the meeting, he announced that the door-to-door sales department would be closed for "economic reasons" and that all employees would be terminated effective August 18, 1989. Although Suburban offered the terminated employees an opportunity to apply for other positions in the company, it discouraged them from applying. The personnel manager advised each employee at his or her exit interview that the employee would forfeit any severance pay if that employee applied for another company position. In addition, the offered positions were at lower salaries and without commissions. None of the employees elected to apply. Consequently, plaintiffs and other employees lost their jobs.

Eighteen months after eliminating the door-to-door sales department Suburban reinstituted door-to-door sales by subcontracting with Cable Television Marketing of America (CTMA), an independent sales marketing concern. Responding to newspaper advertisements placed by CTMA, Denino, Marsillo, and Susan Chapman applied for positions. CTMA immediately hired them.

When Suburban learned from Paul Columbus, a CTMA manager, that CTMA had hired former Suburban employees, Suburban directed Columbus to rescind CTMA's offers of employment. Columbus subsequently testified in a deposition that "Jane Bulman[, a defendant and Manager of Marketing for Suburban,]

didn't want anybody that was affiliated with Suburban Cable before, she didn't want them working with us." In its answers to interrogatories, Suburban admitted that it had informed Columbus that "Suburban would prefer that he not use former employees on their account." Because it did not want to jeopardize its contract with Suburban, CTMA retracted its offers to Denino, Marsillo, and Susan Chapman.

On August 20, 1992, plaintiffs and Susan Chapman filed an eleven-count complaint against Suburban in the Superior Court, Law Division. They seek relief under the New Jersey Constitution, the LAD, and various common-law causes-of-action. Defendants moved pursuant to *Rule* 4:6–2(e) to dismiss all counts except the eighth count, which alleges that Suburban engaged in unlawful age discrimination. The Law Division dismissed counts one through six, which asserted that plaintiffs were victims of a retaliatory discharge. Briefly stated, plaintiffs claim that the discharge was: (1) a violation of *N.J.S.A.* 10:5–12d of the LAD; (2) contrary to a clear mandate of public policy; (3) a violation of the state constitutional prohibition against the taking of private property without due process; (4) a breach of contract; (5) a breach of an implied covenant of good faith and fair dealing; and (6) a result of fraudulent misrepresentation. The court granted plaintiffs leave to amend the remaining counts: count seven, which alleged intentional infliction of severe emotional distress; count nine, which alleged tortious interference with a contractual relationship; count ten, which alleged tortious interference with prospective economic advantage; and count eleven, which alleged defamation.

The Appellate Division granted plaintiffs' motion for leave to appeal the dismissal of counts one through five, but not count six concerning fraudulent misrepresentation. Susan Chapman, having settled her federal court action against Suburban, did not join in the dismissed counts. Nor has she joined in the appeal either in the Appellate Division or in this Court.

The Appellate Division affirmed the dismissal of counts four and five, reinstated count one, and declined to address the dismissal of counts two and three, which it found redundant. Characterizing the central issue as one of standing, the Appellate Division held that plaintiffs, because of their relationship to Susan Chapman as co-workers and co-employed relatives, could maintain a retaliatory-discharge claim under the LAD. We likewise focus on the question whether plaintiffs have standing to maintain such a claim.

–III–

We proceed mindful not only of the rule favoring liberal construction of the complaint, but also of the legislative direction that the LAD "shall be liberally construed in combination with other protections available under the laws of this State." *N.J.S.A.* 10:5–3.

Count one of the complaint asserts that "plaintiffs' termination was an act of retaliatory discharge in violation of the [LAD]." The LAD makes it unlawful for an employer

to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act *or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act.*

[*N.J.S.A.* 10:5–12d (emphasis added).]

Notably, the Legislature amended section 12d in 1992 to add the emphasized language. The amendment expands the class protected from employer retaliation to include not just persons who "opposed any practices or acts forbidden under [the LAD]" or who "filed a complaint, testified or assisted in any proceeding," but also persons who merely "aided or encouraged" another person in the exercise of that person's rights under the LAD.

■ To establish a *prima facie* case of discriminatory retaliation, plaintiffs must demonstrate that: (1) they engaged in a protected activity known by the employer; (2) thereafter their employer unlawfully retaliated against them; and (3) their partic-

ipation in the protected activity caused the retaliation. *Jamison v. Rockaway Township Bd. of Educ.*, 242 *N.J.Super.* 436, 445, 577 *A.*2d 177 (App.Div.1990); *Wrighten v. Metropolitan Hosps., Inc.*, 726 *F.*2d 1346, 1354 (9th Cir.1984).

■ We have no difficulty in finding that Ellen Chapman has standing. By testifying as a witness in Susan's federal court action, Ellen "aided or encouraged" her daughter and co-worker "in the exercise or enjoyment of [a] right granted or protected by [LAD]."

■ The case for the other plaintiffs, although not so compelling, leads us to the same conclusion. From the limited record, we gather that the door-to-door sales department was small and cohesive. Plaintiffs constituted virtually the entire sales force. They claim that the pendency of Susan's action and the department's cohesiveness caused Suburban to retaliate against the entire department. Further, they assert that they "clearly felt that [Susan] had been wronged by the company and [that they] supported her." Finally, they argue that Suburban fired them because it perceived plaintiffs as having supported Susan.

■ Our task is to ascertain the probable legislative intent when an employer discriminates against an employee, the employee complains about the discrimination, and the employer fires the employee's close friends and relatives in direct retaliation. We begin our assessment with the familiar proposition that the clear public policy of this State is to eradicate invidious discrimination from the workplace. *Fuchilla v. Layman*, 109 *N.J.* 319, 334–35, 537 *A.*2d 652, *cert. denied*, 488 *U.S.* 826, 109 *S.Ct.* 75, 102 *L.Ed.*2d 51 (1988). To deny standing to the co-workers would encourage employers to take reprisals against the friends, relatives, and colleagues of an employee who have asserted an LAD claim. Through coercion, intimidation, threats, or interference with an employee's co-workers, an employer could discourage an employee from asserting such a claim. In this context, we doubt that the

Legislature would want us to bar the aggrieved co-workers from the courthouse by denying them standing to sue.

Previously, we have frequently looked to case law under Title VII of the Civil Rights Act of 1964, 42 *U.S.C.* § 2000e, for guidance in developing standards to govern the resolution of LAD claims. *See Erickson v. Marsh & McLennan Co.,* 117 *N.J.* 539, 549–50, 569 *A.*2d 793 (1990) (explaining that New Jersey Supreme Court has adopted methodology of proof used in Title VII cases for use in LAD cases); *Shaner v. Horizon Bancorp.,* 116 *N.J.* 433, 437, 561 *A.*2d 1130 (1989) (noting that LAD standards "have been influenced markedly by the experience derived from litigation under federal anti-discrimination statutes"); *Peper v. Princeton Univ. Bd. of Trustees,* 77 *N.J.* 55, 82–83, 389 *A.*2d 465 (1978) (adopting framework formulated in *McDonnell Douglas Corp. v. Green,* 411 *U.S.* 792, 93 *S.Ct.* 1817, 36 *L.Ed.*2d 668 (1973), for litigation under Title VII); *Drinkwater v. Union Carbide Corp.,* 904 *F.*2d 853, 865 (3d Cir.1990) (stating that New Jersey courts would apply Title VII standard to claims under the LAD); *Weiss v. Parker Hannifan Corp.,* 747 *F.Supp.* 1118, 1126 (D.N.J.1990) (same).

*De Medina v. Reinhardt,* 444 *F.Supp.* 573 (D.D.C.1978), is instructive. In *De Medina,* which arose under Title VII, the plaintiff alleged that she was denied employment at the United States Information Agency (USIA) on account of her gender and national origin, and in retaliation for her husband's anti-discrimination activities on behalf of minority employees at USIA. *Id.* at 574. The Title VII provision analogous to *N.J.S.A.* 10:5–12d provided:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice[,] made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.
>
> [42 *U.S.C.* § 2000e–3(a).]

Like defendants here, the defendant in *De Medina* argued that only the plaintiff's husband, and not the plaintiff herself, could

seek relief under this provision. The argument was that the husband, and not the plaintiff, had engaged in a protected activity. *De Medina, supra,* 444 *F.Supp.* at 580. In rejecting that argument, the court declared that "[s]uch a construction of Title VII would produce absurd and unjust results...." *Ibid.* The court continued:

> While the language of this section indicates that Congress did not expressly consider the possibility of third-party reprisals—*i.e.,* discrimination against one person because of a friend's or relative's protected activities—the very clear intent of Congress would be undermined by the construction defendant suggests. In enacting section 2000e–3, Congress unmistakably intended to ensure that no person would be deterred from exercising his rights under Title VII by the threat of discriminatory retaliation. Since tolerance of third-party reprisals would, no less than the tolerance of direct reprisals, deter persons from exercising their protected rights under Title VII, the Court must conclude ... that section 2000e–3 proscribes the alleged retaliation of which plaintiff complains.
>
> [*Ibid.* (citation omitted).]

In an attempt to distinguish *De Medina,* defendants assert that in that case the plaintiff's husband, the target of the employer's retaliation, was not dismissed. By comparison, defendants point out that Suburban dismissed Susan Chapman along with her coworkers. Defendants argue that *De Medina* stands for the proposition that an employee's friend or relative has standing to complain about retaliation only when the employer has not retaliated against the employee.

The argument misses the mark. Firing an employee engaged in a protected activity does not vitiate coercion, intimidation, threats, or interference with co-workers. Discriminating against one employee in violation of the LAD should not insulate a vengeful employer from claims by other employees against whom the employer has retaliated.

Defendants also try to distinguish *De Medina* for the asserted reason that Suburban, unlike the employer in *De Medina,* did not discharge plaintiffs to send a "chilling" message to Susan Chapman. Rather, defendants read the complaint to allege that Suburban fired plaintiffs to disguise its direct retaliation against Susan. According to defendants, plaintiffs lack standing because they are

merely "innocent victims" of direct retaliation against Susan Chapman.

We find this argument likewise unavailing. Reprisals against "innocent victims," such as relatives and close friends who are co-workers, can be coercive, even when the coercion is unintentional. In the context of Suburban's door-to-door sales department, reprisals against Susan Chapman's mother, sister, and close friends could have had a coercive effect on Susan.

We hold that plaintiffs have standing to pursue their retaliatory-discharge claim. In so holding, we do not pass on the merits of their claim. Plaintiff still must prove all elements of their causes of action.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices HANDLER, O'HERN, POLLOCK, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.