## GAIL FORTUNATO *v.* OFFICE OF STEPHEN M. SILSTON, D.D.S.

Superior Court, Judicial District of Danbury
File No. CV-03 0349261S

Memorandum filed June 23, 2004

*Jeffrey S. Bagnell,* for the plaintiff.

*Randall J. Carreira* and *Coyne, Von Kuhn, Brady & Fries,* for the defendant.

NADEAU, J. This employment termination matter raises an issue apparently new to Connecticut. It is alleged that an individual's exercise of a protected right has led to an employer's retaliatory termination of an employee in violation of public policy. The setting is one in which the claimed right was exercised by the adult daughter of the plaintiff, Gail Fortunato, her mother, who, as an employee in the defendant Office of Stephen M. Silston, D.D.S., suffered the retaliatory termination. The defendant is accused of the wrongful termination[1] of a plaintiff whose daughter, having

---

[1] The phrase "wrongful termination" has been used here to denote the situation in which the plaintiff, on medical leave, was the alleged victim of an employer's broken promise to hold open her position for her. Between November, 1998, and February, 2002, the plaintiff was employed by the defendant office as business office manager. In August, 2001, the plaintiff was diagnosed with cancer and took a medical leave of absence. The plaintiff was allegedly assured by the president and owner of the defendant, Nicholas Cucharale, that her position was secure and would be held open until she was ready to return to work after undergoing chemotherapy. During her leave of absence, Cucharale had performed a dental procedure on the plaintiff's adult daughter, which apparently resulted in a failed tissue graft. The daughter complained to Cucharale about the procedure, canceled future appointments and consulted another dentist, who is said to have informed the daughter that the tissue graft was unnecessary. Cucharale then agreed to return the daughter's fee in exchange for her agreement to release him from any malpractice claim. In February, 2002, Cucharale hired his wife to fill the plaintiff's position and refused to continue the plaintiff's employment. (The employment security appeals division determined that the plaintiff's "discharge" was for reasons other than the plaintiff's wilful misconduct.) The defendant has not urged that the court refuse to treat this scenario as one akin to discharge.

become a patient, was apparently known to be contemplating a dental malpractice action against the defendant office, which employed the plaintiff. The defendant has filed a motion to strike count three of the plaintiff's complaint. In this count, which the plaintiff has styled to sound in wrongful discharge in violation of public policy, the plaintiff describes her theory as an invocation of the *Sheets* exception,[2] which would allow a cause of action for wrongful termination of an at-will employee if the termination is in contravention of a clear mandate of public policy. The plaintiff asserts three separate grounds for this public policy violation claim: first, the policy underlying the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.; second, the right to free association; and, third, the right to open access to the courts. In its motion to strike, the defendant claims each of the plaintiff's arguments suffers from legal insufficiency. This court holds that the plaintiff's claim is actionable under the "open access" rationale and opines that the other grounds are insufficient.

## OPEN ACCESS TO COURTS CLAIM

The plaintiff argues that the circumstances portraying a retaliatory discharge in violation of *Sheets* emanate from her daughter's exercise of her right to access the judicial system as provided for in article first, § 10, of the constitution of Connecticut.[3] In partial support of this argument, the plaintiff cites *Fulford* v. *Burndy Corp.*, 623 F. Sup. 78, 81 (D.N.H. 1985), where the court found on analogous facts that the employer violated a

---

[2] *Sheets* v. *Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 427 A.2d 385 (1980).

[3] Article first, § 10, of the constitution of Connecticut provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." Conn. Const., art. I, § 10.

public policy, open access to the courts, which underlined the New Hampshire constitution. There, however, the terminated worker was the person who had exercised the legally protected right.

The defendant argues that *Fulford* is not persuasive because the standard employed by the New Hampshire courts is different than the common-law claim of wrongful discharge allowed here in Connecticut, and, as noted, the plaintiff in *Fulford* was asserting his *own* right to access the judicial system, whereas here the plaintiff points to her *daughter's* right.

It seems to this court that in the arena of constitutional-public policy interests sufficient to support a tort action for wrongful termination, one such interest is the unfettered right to legal-court redress.

The situation at bar involves at least two rights; one directly relevant, one indirectly so. The indirectly relevant right is that of the daughter to seek recourse. The second and more pertinent right arises in the response by the employer, purportedly in violation of *Sheets*, when the daughter sought to pursue her recourse.

It may miss the mark when the plaintiff says, in positing another rationale for her action, that the conduct here impacts upon the right to associate (in reference to the closeness between mother and daughter). The public policy violation lies in the discharge of one whose close relative's legal recourse is sought to be chilled or avenged by retaliation. It ought not to matter that the clearer constitutional-public policy abrogation appears to direct itself against the daughter for, hand in hand with that, providing the motive is the employer's allegedly illicit "discharge" of the mother.

By analogy, would the termination of a quiet, faithful brother be countenanced if the employer's motivation were that a second, whistleblowing brother might thus

be cowed into silence? It is difficult to rationalize allowing an action if the whistleblowing employee himself were discharged and not when a relative suffers that fate moved by the same animus. The "offense" against public policy or constitutional exercise of rights still exists; the employer's response of wrongful termination to it still exists and for a reason arguably *more* egregious than if the one exercising the right and the discharged worker were the same person. The alleged malignant conduct is focused upon, and motivated by, the exercise of an important right, and that is what the *Sheets* exception seems not to tolerate.

The defendant may be correct in its efforts to distinguish in some regard those cases not from Connecticut cited by the plaintiff,[4] but they at least illustrate that the courts have not insisted that the exercised right lie in the very hand of the person discharged.

At this point, one might do well to note that the aforementioned "open court" argument is not one which is embraced by General Statutes § 31-51q.[5] The defendant had urged that § 31-51q formed the sole basis for the plaintiff's assertions while also noting, of course, that the plaintiff did not invoke it. Section 31-51q provides causes of action for discharged employees "on account of the exercise by such employee of rights

---

[4] *Fitzgerald* v. *Codex Corp.*, 882 F.2d 586 (1st Cir. 1989); *Fulford* v. *Burndy Corp.*, supra, 623 F. Sup. 78; *Craig* v. *Suburban Cablevision, Inc.*, 140 N.J. 623, 660 A.2d 505 (1995).

[5] General Statutes § 31-51q provides in pertinent part: "Liability of employer for discipline or discharge of employee on account of employee's exercise of certain constitutional rights. Any employer . . . who subjects any employee to discipline or discharge on account of the exercise *by such employee* of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state . . . shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees as part of the costs of any such action for damages." (Emphasis added.)

guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state . . . ." The "open court" basis put forth by the plaintiff under article first, § 10, of the constitution of Connecticut does not lie under § 31-51q and the plaintiff's (intentional) failure to rely upon it is, thus, of no consequence.

## FREEDOM OF ASSOCIATION CLAIM

The court does not accept the plaintiff's freedom of association claim. It seems first, to stretch the point[6] and, second, to be *within* the ambit of the statute that the plaintiff has intentionally not invoked. As previously noted, the plaintiff does not rely upon § 31-51q. Her decision is either borne of doubt about whether her freedom of association argument is within the embrace of § 31-51q or because the plaintiff found discomfort in the apparent requirement of § 31-51q that the person discharged and the one exercising the right be one and the same individual. (See the italicized phrase in footnote 5.)

## CUTPA CLAIM

In further support of her cause of action, the plaintiff argues that the underlying public policy of CUTPA, General Statutes § 42-110b (a),[7] preventing unfair trade practices, is a valid foundation from which to invoke the *Sheets* exception. The plaintiff alleges the unfair practice to be the termination of her employment in

---

[6] The court feels the point is stretched because no conduct known to it purports to reveal joint conduct between this parent and child in the nature of an "association." Further, no conduct of the defendant appears directed against their having "associated." It is true that the defendant's termination conduct is said to have occurred due to their *being* associated, but that is obviously not a relationship that the defendant's actionable conduct assaulted.

[7] General Statutes § 42-110b (a) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

retaliation for her daughter's contemplated dental malpractice action against her employer. The plaintiff relies on *Larsen Chelsey Realty Co.* v. *Larsen*, 232 Conn. 480, 493, 656 A.2d 1009 (1995), for the proposition that a CUTPA claim can be based on an employer's unfair conduct, where that conduct occurs outside the parameter of the employer-employee relationship. The plaintiff then argues that the triggering event, her daughter's dental malpractice allegation, obviously occurred outside the employer-employee relationship. That, however, is just a fact and is not the focus of the central conduct here. The behavior deemed worthy of suit takes place *inside* the employment relationship.

The defendant seems correctly to argue that the pertinent facts in the present case implicate the employer-employee relationship, a relationship to which CUTPA does not apply. *Quimby* v. *Kimberly Clark Corp.*, 28 Conn. App. 660, 670, 613 A.2d 838 (1992) ("the employer-employee relationship does not fall within the definition of trade or commerce for the purposes of an action under CUTPA").

This court must conclude that the plaintiff would not frankly have been able to assert a valid CUTPA based claim because, to follow *Quimby*, the relationship on center stage was that of employee-employer, as is the nature of the harm suffered, termination. The plaintiff acknowledges this prospect, suggesting instead that a *Sheets* based termination claim can be founded upon the rights *underlying* CUTPA protections, thus suggesting another repository of rights for use under *Sheets*.

If the plaintiff were permitted to assert the public policy against unfair trade practices underlying CUTPA, then the interpretation of *Quimby* and the application of the statute would be easily circumvented by the facile device of skipping through the CUTPA statute to its subterranean bases. This end run would render *Quimby*

virtually without meaning, and would do so without support in any case known to this court.

Thus, while the termination's motivating event occurred outside of the employment relationship, the termination itself lies at the action's heart. The plaintiff, therefore, must be deemed unable to assert the public policy underlying CUTPA as a basis for recourse in wrongful termination.