**Jessennia Rodas MONTALVO;**
**Jose Montalvo**

v.

**CITY OF NEWARK; Vincent Gagliano; Vincent Demaio; Lillian Mejias; Anthony Ambrose, III; Irving Bradley; John and Jane Does 10.**

**City of Newark, Appellant.**

**Jessennia Rodas Montalvo; Jose Montalvo Jose Montalvo,**
**Appellant**

v.

**City of Newark; Vincent Gagliano; Lillian Mejias; Anthony Ambrose, III; Irving Bradley; Samuel Demaio; John and Jane Does 10.**

Nos. 11–2818, 11–3899.

United States Court of Appeals,
Third Circuit.

Submitted Pursuant to Third Circuit
LAR 34.1(a) Nov. 15, 2012.

Filed Dec. 21, 2012.

Anthony J. Fusco, Jr., Esq., Fusco & Macaluso, Passaic, NJ, for Jessennia Rodas Montalvo and Jose Montalvo.

Eric S. Pennington, Esq., Newark, NJ, for City of Newark, Vincent Gagliano, Vincent Demaio, Lillian Mejias, Anthony Ambrose, III and Irving Bradley.

Kathleen C. Goger, Esq., Denville, NJ, for Anthony Ambrose, III and Irving Bradley.

Before: RENDELL, FUENTES and CHAGARES, Circuit Judges.

## OPINION

CHAGARES, Circuit Judge.

In the District Court for the District of New Jersey, a jury found that the City of Newark wrongfully terminated Jose Montalvo for retaliatory reasons, in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5–1 *et seq.*, and awarded him a judgment of $700,000. The City of Newark ("Newark") appeals the District Court's denial of its renewed motion for judgment as a matter of law or, in the alternative, motion for a new trial. Montalvo cross-appeals, seeking review of the District Court's denial of his request for reinstatement to the Newark Police Department. For the reasons expressed below, we will affirm as to the District Court's denial of Newark's renewed motion for judgment as a matter of law and motion for a new trial. We will also affirm

as to the District Court's denial of Montalvo's request for reinstatement.

## I.

Because we write solely for the parties' benefit, we recite only the facts essential to our disposition. Montalvo was a police officer in the Newark Police Department ("NPD") from 1990 until 2006, when his employment was terminated. Following his termination, Montalvo brought suit in District Court, alleging, among other things, that he was fired in retaliation for an affirmative action complaint he filed on April 22, 2005. That complaint alleged harassment and unfair treatment commencing in 2000, the year in which Montalvo fired his weapon at a Newark citizen, injuring the victim's spleen.[1] Montalvo argued before the jury that, after filing the affirmative action complaint, he experienced a pattern of antagonism leading to his discharge in 2006.

The jury also heard evidence in support of Montalvo's claim against Newark for wrongful race-based termination, but the jury found in favor of Newark on that claim. However, the jury did find that Newark retaliated against Montalvo for the filing of an affirmative action complaint, and awarded Montalvo damages in the amount of $700,000. Newark renewed its motion for judgment as a matter of law and moved, in the alternative, for a new trial. The District Court denied those motions, and Newark now appeals their denial. Montalvo filed a motion for reinstatement to the Newark Police Department which the District Court denied, and which Montalvo cross-appeals here.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291. In a challenge to the District Court's denial of judgment as a matter of law, we exercise plenary review, applying the same standard as the trial court. *Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 492 (3d Cir.2002). A motion for judgment as a matter of law "should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Id.* We review the denial of Newark's motion for a new trial for abuse of discretion. *Roebuck v. Drexel Univ.*, 852 F.2d 715, 735 (3d Cir.1988).

As for Montalvo's appeal of the District Court's decision to deny him reinstatement, we review that for abuse of discretion as well. *Feldman v. Phila. Hous. Auth.*, 43 F.3d 823, 832 (3d Cir.1994).

## III.

In order to establish a prima facie case of retaliation under the NJLAD, Montalvo was required to show that he engaged in an activity protected by the statute and

---

1. After the shooting, the Federal Bureau of Investigation began investigating Montalvo for civil rights violations, and took custody of Montalvo's duty weapon. Having been relieved of his weapon, Montalvo was reassigned to different divisions that did not require carrying a weapon. In particular, Montalvo was assigned to cell block duty for a period of time longer than any other officer had previously received, trial witnesses testified. As an officer of the NPD stated at trial,

"[c]ell block is traditionally for individuals that they want to punish. It's like becoming a political prisoner...." Montalvo Appendix ("M. App.") 134. Montalvo testified before the jury that he had requested the return of his weapon or issuance of a replacement weapon, transfer to another department, and replacement of a firearms identification card he had lost, but that he received no response to his requests.

that the activity was known to his employer, that an adverse employment action was taken against him by his employer either at the same time or after the protected activity took place, and that his "participation in the protected activity caused the retaliation." *Craig v. Suburban Cablevision*, 140 N.J. 623, 660 A.2d 505, 508 (1995). Newark argues that the jury verdict could not have been properly reached because Montalvo failed to offer evidence creating a causal link between his engagement in a protected activity (the 2005 filing of the affirmative action complaint) and the adverse employment action (his termination). Under New Jersey law, "causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive." *Romano v. Brown & Williamson Tobacco Corp.*, 284 N.J.Super. 543, 665 A.2d 1139, 1142 (N.J.Super.Ct.App.Div.1995).

[1] In the instant case, Montalvo argues that evidence of circumstances justifying an inference of retaliatory motive was proven at trial—namely, that "immediately after he filed his complaint he was beset by a series of petty harassments on his job and that attempts were made to bring him up on charges many times," as well as having "a harassing epithet by a superior officer" aimed at him. Montalvo Br. 19. Montalvo testified at trial that, after his submission of the affirmative action complaint on April 22, 2005, he served a twenty-day suspension for the shooting that had taken place in 2000. M. App. 152–53. Moreover, he testified that, also in 2005, he "started getting brought up on charges for stuff like spilling coffee on [his] shirt," that "they tried to bring [him] up on charges numerous times," and that Montalvo was referred to as "a Puerto Rican" in an incident that "should have been reported through the rules and regulations," but was not. *Id.* at 164–65. Although Newark may argue that this evidence was not credible, this testimony nevertheless presents circumstances sufficient to support an inference of retaliatory motive and, therefore, sufficient to support the jury's verdict.

[2] Newark further argues that it offered evidence that it had a legitimate nondiscriminatory reason for terminating Montalvo—specifically, that Montalvo had made false sworn statements during an internal investigation, and that he had disclosed confidential information about that investigation. Joint Appendix ("J. App." 326–41). However, a reasonable jury may nevertheless have found that this proffered reason was pretextual, in light of the evidence of a pattern of antagonism against Montalvo after he filed his affirmative action complaint, and in light of testimony that "many [officers] were charged with false statements that weren't terminated." M. App. 102.

[3] Newark also contends that Anthony Campos, the Chief of the NPD in 2006, who ultimately terminated Montalvo's employment, did not know that Montalvo had filed the 2005 affirmative action complaint. Therefore, Newark argues, Montalvo's termination could not have been retaliatory, since retaliation under the NJLAD requires a showing that the plaintiff's employer knew of the plaintiff's engagement in protected activity. *Craig*, 660 A.2d at 508. Montalvo responds that the jury may have chosen not to believe Campos's testimony that he had no knowledge of the affirmative action complaint. Furthermore, the New Jersey Supreme Court has held that, where the individual directly responsible for a plaintiff's termination relies upon an evaluation prepared by others, "jurors may infer a causal connection based on the surrounding circumstances," and a jury may "reasonably conclude[ ]" that the individual responsible for the ter-

mination decision "relied on a 'tainted' evaluation prepared by" another employee. *See Estate of Roach v. TRW, Inc.,* 164 N.J. 598, 754 A.2d 544, 551–52 (2000) (discussing retaliation claims under the Conscientious Employee Protection Act ("CEPA")); *see also Abbamont v. Piscataway Twp. Bd. Of Educ.,* 138 N.J. 405, 650 A.2d 958, 964 (1994) (explaining that, because the NJLAD and CEPA share common public policy goals, the standard to be applied in an action under each statute is the same). Because Campos terminated Montalvo after having read the recommendation of a trial board, M. App. 215, a jury that found circumstances justifying an inference of retaliatory motive against Montalvo could reasonably have concluded that such antagonism motivated the trial board's recommendation. Accordingly, we will affirm the District Court's denial of Newark's renewed motion for judgment as a matter of law and motion for a new trial.

### IV.

We turn next to Montalvo's request for reinstatement. In the age discrimination context, this Court has held that "[b]lack pay coupled with reinstatement is the preferred remedy to avoid future damages." *Blum v. Witco Chem. Corp.,* 829 F.2d 367, 373 (3d Cir.1987). However, we have also held that "reinstatement is not the exclusive remedy, because it is not always feasible, such as when there exists irreparable animosity between the parties." *Feldman,* 43 F.3d at 831 (quotation marks omitted).

The District Court acknowledged its duty "to take into consideration all of the factors, the circumstances, the history that exists, and the particular circumstance that's before the Court in this case." M. App. 22. In particular, the District Court considered the question of whether there was too much animosity between Montalvo and the Newark Police

Department for Montalvo to resume his work there. *Id.* at 228. The District Court highlighted the attention paid in discovery and at trial to the allegations that the Director of the Newark Police Department had an affair with Montalvo's ex-wife. The District Court reasoned that "it would be extremely difficult ... for the Court to say to Mr. Montalvo, 'go back into that scenario and go back into that situation and pick up where you left off,' when obviously there's extreme animosity" between Montalvo and the Director, as well as between Montalvo and other members of the Department. *Id.* Moreover, as the District Court pointed out, "the request is essentially for a short-lived reinstatement," which the District Court found did not manifest "a real interest ... to return to that position...." *Id.* at 228–29. Given this reasoning, we conclude that the District Court did not abuse its discretion in denying Montalvo reinstatement.

### V.

For the foregoing reasons, we will affirm the District Court's denial of Newark's motion for a new trial and renewed motion for judgment as a matter of law, and we will also affirm the District Court's decision not to order Montalvo's reinstatement.