NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3370
_____

CHRISTINE A. MICHAELS,
                                        Appellant

v.

BJ'S WHOLESALE CLUB, INC.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-11-cv-05657)
District Judge:  Hon. Kevin McNulty
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 19, 2015

Before:   SMITH, JORDAN, and SLOVITER, *Circuit Judges*.

(Filed: March 20, 2015)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

Christine A. Michaels appeals an order of the United States District Court for the

District of New Jersey granting summary judgment against her and in favor of BJ's

_____

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

Wholesale Club, Inc. ("BJ's") on her claim that BJ's retaliated against her for activity protected under New Jersey's Law Against Discrimination ("LAD"), N.J.S.A § 10:5-1 *et seq*. For the reasons that follow, we will affirm the District Court's order.

## I. Background

BJ's hired Michaels as an Assistant Manager in August 1991. She received several promotions during the course of her employment, including one to General Manager and then to Regional Manager. As Regional Manager, she supervised the operations of several BJ's stores in northern and central New Jersey. When Michaels first became Regional Manager, she reported directly to Frank Buonvicino, one of the five Zone Vice Presidents for BJ's Sales Operation team. At that time, Buonvicino reported to Thomas Gallagher, who was then BJ's Senior Vice President and Director of Field Operations. Gallagher was later promoted and he recruited an external candidate, Cornel Catuna, to replace him.

On September 22, 2009, BJ's received an anonymous complaint to its ethics hotline that Michaels and other employees had consumed alcoholic beverages on the premises of a BJ's store in East Rutherford, New Jersey. According to the BJ's employee handbook, the Club Team Member Guide, "[p]ossession, distribution, use, or being under the influence of illegal drugs or alcohol … on Company property at any time" is a high-level infraction which "may result in immediate termination of employment for the first offense." (App. at 350.) BJ's promptly commenced an investigation, which was led by Robin Bombardier, an Area Human Resources Manager, and Robert Kirby, a Regional Asset Protection Manager. Michaels was interviewed and admitted to consuming alcohol

2

on BJ's property on the day in question. Charmaine Sealey, a Regional Asset Protection Manager, also admitted to having consumed alcohol in the store parking lot that day. After completing the investigation, Bombardier and Kirby presented their findings to Gallagher, Catuna, and Susan Hoffman, BJ's Senior Vice President of Human Resources. The three ultimately decided to terminate both Michaels's and Sealey's employment. Although other, lower-ranking personnel also participated in the drinking incident, Gallagher, Catuna, and Hoffman decided to terminate only the most senior employees.

Michaels contends that her dismissal for consuming alcohol on company property was pretextual. She says that she and the others were merely engaging in what was at BJ's a common practice known as an "inventory toast," where employees consumed alcohol on company premises to celebrate the completion of taking a store's inventory. She asserts that this practice has been going on since she first began working at BJ's in 1991 and that many other high-ranking officials, including her supervisor, Buonvicino, and other Regional Mangers, had been present at inventory toasts in the past. A current Regional Manager, Rafat Raghib, and a General Manager, Beverly Bongiorno, both corroborated Michaels's testimony.[1] According to Michaels, the real reason she was fired was as retaliation for complaints of discriminatory conduct that she had made

_____

[1] In 2008, BJ's received a complaint that its employees were consuming alcohol at a company barbeque in the parking lot of a BJ's club in Paramus, New Jersey. That complaint was also investigated and the investigation confirmed that two supervisory employees had purchased and supplied the alcohol. Both supervisors were fired as a result of the incident. Michaels admits that she knew about the Paramus incident around the time it occurred, nearly a year before she participated in the inventory toast at issue here. She argues, however, that, unlike the inventory toast, the Paramus incident occurred during work hours, and thus is not comparable to the situation at hand.

3

against Catuna, the last of which she made in August 2009, approximately five weeks before she was terminated.[2] She says that she reported Catuna's behavior to Buonvicino and Caroline Hicks, a Human Resources Manager at a BJ's club in Watchung, New Jersey, but both Hicks and Buonvicino deny ever having been approached by Michaels with such complaints.

Michaels filed a complaint in the District Court on September 29, 2011, asserting seven claims, four of which were dismissed with prejudice by stipulation. The three remaining claims were for retaliation in violation of the LAD, breach of contract, and breach of the implied duty of good faith and fair dealing. The District Court granted summary judgment in favor of BJ's on all three claims. Michaels appeals only the Court's grant of summary judgment on her retaliation claim, and her appeal is timely.

---

[2] On appeal, Michaels focuses only on the last complaint she made before she was terminated. That complaint arose from Catuna's site visit to a BJ's club in Watchung, New Jersey, which was managed by Bongiorno. According to Michaels, after that visit, Bongiorno called Michaels and said, in reference to Catuna, "what is it about this guy, does he just hate women?" (App. at 432.)

4

## II.     Discussion[3]

Michaels argues that BJ's retaliated against her for lodging complaints about Catuna's discriminatory conduct. An unlawful retaliation claim under the New Jersey LAD is analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Mancuso v. City of Atl. City*, 193 F. Supp. 2d 789, 811 (D.N.J. 2002) ("Analysis of LAD retaliation claims follows the now-familiar burden-shifting framework established for disparate treatment claims under Title VII and the LAD.") Under that framework, a plaintiff has the burden of establishing a *prima facie* case of retaliation by showing that she was engaged in a protected activity of which the employer was aware, that she was subject to adverse employment action, and that there was a causal link between the protected activity and the adverse employment action. *Craig v. Suburban Cablevision, Inc.*, 660 A.2d 505, 508 (N.J. 1995). If the plaintiff is able to make such a showing, the burden of production shifts to the employer to "'articulate some legitimate, nondiscriminatory reason' for its decision." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012) (quoting *McDonnell*, 411 U.S. at 802). If the employer "meets this minimal burden," *id.*, the plaintiff "must point

---

[3] The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's summary judgment ruling. *Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314, 317 (3d Cir. 2014). A party is entitled to summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We construe the facts in the light most favorable to Michaels, as the party opposing summary judgment. *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 257 (3d Cir. 2012) ("When reviewing a grant of summary judgment the court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." (internal quotation marks and citation omitted)).

to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action," *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

Although Michaels makes a series of arguments relating to the pretextual nature of her termination, we need not reach those arguments because she fails to establish a genuine dispute of fact as to her *prima facie* case of retaliation. Specifically, she has provided no evidence that the people who fired her were aware that she was engaged in protected activity, i.e., complaining of discriminatory conduct in the workplace. Even assuming that Michaels did complain to Buonvicino and Hicks about Catuna, she has pointed to nothing to show that Gallagher, Catuna, or Hoffman knew of those complaints. Catuna and Hoffman contend that they were unaware of any complaints at the time they decided to terminate Michaels, and Michaels herself admits that she had no knowledge as to whether any of her complaints made their way up to Gallagher, Catuna, or Hoffman.

She argues, however, that indirect and circumstantial evidence suggests that Hicks and Buonvicino did relay her complaints to Gallagher, Catuna, and Hoffman. She says that Buonvicino told her he would follow up directly with Catuna about one of her complaints, and she notes that Buonvicino himself stated that he generally spoke with Catuna daily. She also says that Hicks testified that she never failed to follow up with her supervisors regarding complaints of discriminatory conduct. But Buonvicino's regular contact with Catuna does not raise an inference that Buonvicino told anyone that Michaels was the source of complaints. Nor does Hicks's general statement, completely

6

unrelated to the specific complaint at issue here, demonstrate that Michaels's complaints came before Hoffman, Catuna, or Gallagher. Even assuming that Hicks did follow up with her supervisor about those complaints, Michaels provides no evidence that Hoffman, Catuna, or Gallagher were the supervisors to which Hicks would report or that, under normal procedure, the complaints would eventually reach any of them.

Although Michaels may have "had every hope that [her] complaints were going to be addressed" (App. at 172), that alone, untethered from any evidence showing that her hope was well-founded, is not sufficient for a rational juror to conclude that Catuna, Hoffman, or Gallagher knew of her complaints at the time they fired her. Thus, her assertions do not demonstrate a genuine factual dispute and are insufficient to defeat BJ's motion for summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. … Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" (citations and footnote omitted)). The District Court accordingly did not err in holding that Michaels failed to establish a *prima facie* case of retaliation.

## III. Conclusion

We will therefore affirm the District Court's order granting summary judgment in favor of BJ's on the retaliation claim.

7