NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0603-18T1

CRAIG SASHIHARA,
Director of the New Jersey
Division on Civil Rights,

     Plaintiff-Appellant,

v.

NOBEL LEARNING
COMMUNITIES, INC.,
d/b/a CHESTERBROOK
ACADEMY,

     Defendant-Respondent.

_____

> **APPROVED FOR PUBLICATION**
>
> **October 16, 2019**
>
> **APPELLATE DIVISION**

Argued September 17, 2019 – Decided October 16, 2019

Before Judges Yannotti, Hoffman and Currier.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-2227-16.

James R. Michael, Deputy Attorney General, argued the cause for appellant (Gurbir S. Grewal, Attorney General, attorney; Jason Wade Rockwell, Assistant Attorney General, of counsel; James R. Michael and Farng-Yi D. Foo, Deputy Attorneys General, on the briefs).

Bonnie M. Hoffman argued the cause for respondent (Hangley Aronchick Segal Pudlin & Schiller,

attorneys; Bonnie M. Hoffman and Andrew M. Erdlen,
on the briefs).

The opinion of the court was delivered by

HOFFMAN, J.A.D.

In this appeal, we consider whether the Director of the Division of Civil Rights (the Director) has general authority to sue in Superior Court, whether the Superior Court may grant permanent injunctive relief on the Director's complaint, and whether the New Jersey Law Against Discrimination (LAD)[1] recognizes a claim for failure to contract with parents of a disabled child. Deciding each issue in the negative, the Law Division dismissed the Director's complaint. We affirm.

I

Defendant, a private, for-profit corporation, describes itself as "a network of more than 180 private schools in 19 states and the District of Columbia." Defendant owns and operates facilities at four different locations in New Jersey, under the trade name of Chesterbrook Academy. These facilities admit children from the age of six weeks through six years in a day program, "before and after care," and summer camp.

---

[1] N.J.S.A. 10:5-1 to -49.

A-0603-18T1

M.M. (Jane),[2] the child at the heart of this dispute, was born in July 2011, with Down Syndrome. In January 2012, Jane's parents enrolled her at defendant's center in Moorestown, as part of its "Infant" program, for children up to twelve months old. Jane eventually progressed to the "Beginner B" program, for children between two and a half and three years old.

When Jane turned three, she entered the "Intermediate" program, which did not provide diapering services.[3] Defendant advised Jane's mother in January 2015 of an April 1 deadline for Jane to be toilet trained. However, Jane's pediatrician advised that, due to her developmental delays, Jane "will not be able to fully potty train until age [five] or older." According to Jane's mother, on March 25, 2015, defendant's principal informed her that Jane "would be dis-enrolled if not toilet trained by April 1."

Between January 26, 2015 and March 26, 2015, defendant's employees changed Jane's diaper twenty-two times. Jane's parents requested defendant reassign Jane back to the Beginner B program; however, defendant declined

---

[2] To protect the privacy of the minor child, we use initials and a pseudonym in place of her full name.

[3] Defendant provided diaper-changing services to children enrolled in its "Infants," "Toddlers," and "Beginners" programs, but not to children enrolled in its "Intermediate" and "Pre-K" programs.

this request, and ultimately dis-enrolled Jane when she was not potty-trained by defendant's April 1 deadline.

On April 26, 2015, Jane's parents filed an administrative complaint with the Division of Civil Rights (DCR) on behalf of Jane. The complaint alleged defendant discriminated against Jane based on her Down Syndrome. After substantiating the charges, the Director filed a complaint against defendant in the Law Division. Jane's parents did not join in the complaint nor were they named as parties.

The Director's three-count complaint alleged defendant failed to provide reasonable accommodations, subjected Jane to differential treatment, and failed to contract with Jane's parents "because of Jane's disability." The complaint demanded injunctive relief ordering defendant: 1) to modify its policies and procedures; 2) to cease and desist its discriminatory practices and policies; and 3) to undergo training and monitoring for a period of five years. In addition, the complaint demanded compensatory damages for Jane and her parents, punitive damages for the Director, civil penalties, fees and costs.

In December 2016, defendant filed a motion for partial dismissal for failure to state a claim based on three grounds: 1) the Director lacked authority to file an action in Superior Court for compensatory damages for non-party private citizens, punitive damages for himself, or penalties; 2) Jane's parents

are not "aggrieved" persons under the LAD; and 3) the LAD does not recognize claims of discrimination arising from refusing to do business with a person on the basis of the person's child's disability. The motion judge granted the motion, based on the first and third arguments.

Defendant later filed a motion for summary judgment on the injunctive relief claims, which the motion judge granted. The judge held that under the LAD, the Superior Court cannot issue permanent injunctive relief; instead, N.J.S.A. 10:5-14.1 "only allows [the Director] to seek temporary injunctive relief that preserves the status quo pending the outcome of an administrative hearing." Because the Director chose to pursue an action in Superior Court rather than an administrative action, and because "the circumstances that potentially warranted an injunction against discrimination no longer exist," the motion judge concluded the Director's claim for injunctive relief was moot. This appeal followed.

II

We review a motion to dismiss de novo. We examine "the legal sufficiency of the facts alleged on the face of the complaint, doing so with liberality, and [accord] every reasonable inference to the plaintiffs." Borough of Seaside Park v. Comm'r of N.J. Dep't of Educ., 432 N.J. Super. 167, 200 (App. Div. 2013) (citing Printing Mart-Morristown v. Sharp Elecs., 116 N.J.

5

739, 746 (1989)). The essential test is "whether a cause of action is 'suggested' by the facts." Printing Mart, 116 N.J. at 746 (quoting Velantzas v. Colgate-Palmolive, 109 N.J. 189, 192 (1988)). Nonetheless, we will dismiss the pleading "if it states no basis for relief and discovery would not provide one." Rezem Family Assocs. v. Borough of Millstone, 423 N.J. Super. 103, 113 (App. Div. 2011).

The Director argues that two bases support his filing of this claim in Superior Court. One is statutory; the other concerns the DCR's authority under the doctrine of parens patriae. We address each argument in turn.

A

Pursuant to N.J.S.A. 10:5-13, "Any person claiming to be aggrieved by an unlawful employment practice or an unlawful discrimination may, personally or by an attorney-at-law, make, sign and file with the division a verified complaint . . . ." (emphasis added). Further, "The Commissioner of Labor and Workforce Development, the Attorney General, or the Commissioner of Education may, in like manner, make, sign and file such complaint." Ibid. Likewise, "Any complainant may initiate suit in Superior Court under this act without first filing a complaint with the division or any municipal office." Ibid. (emphasis added). However,

> At any time after 180 days from the filing of a
> complaint with the division, a complainant may file a

request with the division to present the action personally or through counsel to the Office of Administrative Law. Upon such request, the director of the division shall file the action with the Office of Administrative Law, provided that no action may be filed with the Office of Administrative Law where the director of the division has found that no probable cause exists to credit the allegations of the complaint or has otherwise dismissed the complaint.

[N.J.S.A. 10:5-13]

Because the statute specifically permits any "person" and also the Attorney General to file a verified complaint with the Division, and then permits any "complainant" to file directly in Superior Court, the Director maintains the statute enables him to file a complaint in Superior Court.

Since rules of statutory construction require that different words have different meanings, the Director argues the term "complainant" must mean something different than "person." See GE Solid State, Inc. v. Director, Div. of Taxation, 132 N.J. 298, 307-08 (1993). Thus, according to the Director, "complainant" includes "not only individual 'persons,' but also the Attorney General (acting through the Director) and the Commissioners of Education and Labor."

In making her decision, the motion judge looked to the Rules of Practice and Procedure governing "all proceedings in the Division of Civil Rights." N.J.A.C. 13:4-1.1. The Rules define "complainant" as "any person filing a

verified complaint alleging discrimination under the [LAD] . . . ." N.J.A.C. 13:4-1.4. (emphasis added). The judge then examined the definition "person" contained in the LAD, which "includes one or more individuals, partnerships, associations, organizations, labor organizations, corporations, legal representatives, trustees, trustees in bankruptcy, receivers, and fiduciaries." N.J.S.A. 10:5-5(a). Because the statutory definition did not reference the Director, the motion judge concluded the Director could not constitute a complainant.

The Director emphasizes the definition section of the LAD does not precisely define "person"; instead, the statute merely uses the term "includes," suggesting that other individuals or organizations could constitute "persons." Defendant counters that the Director cannot be considered a complainant under N.J.S.A. 10:5-13. Defendant argues that because an aggrieved person may file in the Division, the section of the statute requiring the Division to notify the "complainant" on a form made by the Director, of the complainant's rights under the act, would create a patently absurd result. See N.J.S.A. 10:5-13 ("Upon receipt of the complaint, the division shall notify the complainant on a form promulgated by the director of the division and approved by the Attorney General of the complainant's rights under this act. . . . "). Likewise, the statute also would reach an absurd result by requiring the Director to seek permission

from his own agency before filing the claim with the OAL. Ibid. ("At any time after 180 days from the filing of a complaint with the division, a complainant may file a request with the division to present the action personally or through counsel to the Office of Administrative Law."). We find defendant's argument persuasive.

While the Director argues that reading the statute to prevent him from filing in Superior Court itself reaches an absurd result, the language of the Act supports this interpretation. In fact, the language of the Act specifically references several instances where the Director may file in Superior Court; however, none apply here. For instance, the Director may file in Superior Court to seek preliminary injunctive relief, to adjudicate housing discrimination matters, and to enforce orders entered in administrative proceedings. See N.J.S.A. 10:5-14.1; 10:5-16; 10:5-19.

Further, taking the statutory scheme as a whole, as we must, we conclude defendant's interpretation should prevail. See Chasin v. Montclair State Univ., 159 N.J. 418, 427 (1999) (citing Zimmerman v. Municipal Clerk of Twp. of Berkeley, 201 N.J. Super. 363, 368 (App. Div. 1985)). The statute does not provide for the Director to turn to the Superior Court in every case. Instead, it spells out specific instances, and this case does not constitute such an instance. Further, defendant's interpretation avoids the absurdity of the

Director needing to provide notice to himself of his rights or needing to seek his own permission to proceed to the OAL.

B

The parens patriae doctrine likewise does not provide a basis for the Director to file suit in Superior Court in this case. "Parens patriae refers to 'the state in its capacity as provider of protection to those unable to care for themselves.'" Hojnowski v. Vans Skate Park, 187 N.J. 323, 333 (2006) (quoting Black's Law Dictionary 1144 (8th ed. 2004)). The power arises from the "inherent equitable authority of the sovereign to protect those persons . . . who cannot protect themselves . . . ." In re D.C., 146 N.J. 31, 47-48 (1996).

Parens patriae does not apply here because it exists to help those unable to protect themselves. In this case, the LAD gives those who have been discriminated unlawfully against the authority to protect themselves by filing causes of action. In fact, Jane's parents demonstrated this ability by filing their verified complaint with the DCR less than one month after defendant dis-enrolled Jane.

The Director's complaint also alleged a cause of action based on defendant's failure to contract with Jane's parents due to Jane's disability. See N.J.S.A. 10:5-12 (l). The motion judge rejected this count on a motion to dismiss.

A-0603-18T1

The LAD makes it unlawful for any person to refuse to "contract with" or

> provide goods, services or information to, or otherwise do business with any person on the basis of the race, creed, color, national origin, ancestry, age, pregnancy or breastfeeding, sex, gender identity or expression, affectional or sexual orientation, marital status, civil union status, domestic partnership status, liability for service in the Armed Forces of the United States, disability, nationality, or source of lawful income used for rental or mortgage payments of such other person or of such other person's spouse, partners, members, stockholders, directors, officers, managers, superintendents, agents, employees, business associates, suppliers, or customers.
>
> [N.J.S.A. 10:5-12(l)]

The statute, despite listing multiple classes of persons, does not name "child" as one of the protected persons. The Director argues that children should be included based on "the broad wording used by the Legislature." The Director argues the legislature's use of the word "spouse" also encompasses the term "family." This interpretation ignores established case law that courts should apply a word's ordinary meaning unless there is a clear indication otherwise. DiProspero v. Penn, 183 N.J. 477, 492 (2005); Rubin v. Chilton, 359 N.J. Super. 105, 110 (App. Div. 2003).

The Director relies on J.T.'s Tire Services, Inc. v. United Rentals North America, Inc., 411 N.J. Super. 236 (App. Div. 2010). In that case, a female

business owner pursued a failure to contract claim when another business withheld payments and threatened to withdraw its purchases unless the female owner engaged in a sexual relationship. Id. at 238. But that case did not deal with extending section (l) liability based on one's child. Rather, it concerned discrimination on the basis of sex, where quid pro quo sexual harassment had long been illegal. Id. at 241-43.

The Director also cites Craig v. Suburban Cablevision, 140 N.J. 623 (1995), for the proposition that "friends and family associated with an individual who complained of sexual harassment are also protected against retaliation." In Craig, the Court answered the question of whether co-workers have standing to sue for retaliatory discharge after the employer instituted sweeping changes – including firing an entire department – in response to a sexual harassment suit; however, Craig concerned retaliation claims, rather than failure to contract claims. Id. at 630. In addition, the co-workers were explicitly protected under the retaliation statute because, as the complaint alleged, they "aided or encouraged" the employee who filed the original harassment suit. Ibid. The plain language of the statute protects those who aid or encourage reporting; however, the Court did not expand the protected categories, as the Director suggests here.

The Director further asserts the motion judge failed to address the argument that the case could be viewed in the context that Jane is actually the "customer" defendant discriminated against. However, the Director did not raise this argument in the complaint, which only addressed defendant's failure to contract with Jane's parents. We therefore affirm the dismissal of the Director's claim for failure to contract.

### III

The Director also challenges the motion judge's summary judgment dismissal of his demand for injunctive relief. We review a grant of summary judgment de novo and apply the same standard under Rule 4:46-2(c) that governs the motion court. Oyola v. Xing Lan Liu, 431 N.J. Super. 493, 497 (App. Div. 2013) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 539-40 (1995)). We view all the evidentiary materials before the Law Division on the motion, including the facts and inferences therefrom, in the light most favorable to the non-moving party. Estate of Hanges v. Metro. Prop. & Cas. Ins., 202 N.J. 369, 374 (2010).

The Director sought injunctive relief pursuant to N.J.S.A. 10:5-14.1, which states:

> At any time after the filing of any complaint the Attorney General may proceed against any person in a summary manner in the Superior Court of New Jersey to compel compliance with any of the provisions of

this act, or to prevent violations or attempts to violate any such provisions, or attempts to interfere with or impede the enforcement of any such provisions or the exercise or performance of any power or duty thereunder.

Specifically, the Director sought an injunction to prevent defendant from engaging in discriminatory conduct, require defendant to modify its practices and policies to ensure there is no further discrimination, and require defendant to submit to training and monitoring for five years.

The Director argues the trial court's ruling that injunctive relief must occur during a pending administrative action rewrites the statute. However, the corresponding regulation supports reading the statute to apply only to temporary injunctive relief during a pending administrative action. The regulation provides, in pertinent part:

> If the Director determines that the interests of the complainant may be irreparably damaged by the lapse of time before a hearing could be scheduled or between the scheduling of a hearing and the ultimate disposition of the matter in the Division, he or she shall instruct the attorney for the Division to seek such temporary injunctive relief in the Superior Court of New Jersey, pursuant to N.J.S.A. 10:5-14.1, as may be appropriate to preserve the rights of the complainant.
>
> [N.J.A.C. 13:4-11.3]

Further, N.J.S.A. 10:5-14.1 only authorizes relief in a summary proceeding. Summary proceedings must conform to the procedures outlined in

14

<u>Rule</u> 4:67-1(a), which require the action begin with the filing of an order to show cause and to follow certain time periods. It also contemplates an abbreviated discovery schedule. <u>See</u> <u>R.</u> 4:67-2(b). The Director did not follow the enumerated procedures, and does not even argue that he did.

Instead, the Director argues that the statute's use of the word "may" gives the Director authority to proceed with either a plenary action or a summary action. However, a plain reading of the statute does not support this interpretation; instead, it simply allows the Director the option to file the summary action or not file the summary action. <u>See</u> <u>O'Connell v. State</u>, 171 N.J. 484, 488 (2002) (holding courts "may neither rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0603-18T1